IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LARRY TYRONE BRANTLEY, SR., ELLEN BRANTLEY,

        Plaintiffs,

    v.

GARRETT BOYD, MODO REALTY, INC., ROYAL CROWN MORTGAGE, INC., SERGEI KLYAZMIN, ACADEMY ESCROW,

        Defendants.

Case No. 07-6139 SC

ORDER RE PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

## I.   INTRODUCTION

Before the Court are two Motions for Partial Summary Judgment filed by Plaintiffs Larry Brantley and Ellen Brantley ("Plaintiffs"). Plaintiffs' first Motion seeks partial summary judgment against Defendant Academy Escrow ("Academy"). ECF No. 159 ("First MSJ"). The Motion is fully briefed. ECF Nos. 177 ("First Opp'n"), 183 ("First Reply"). Plaintiffs' second Motion seeks partial summary judgment against Defendants Modo Realty, Inc. ("Modo Realty"), Royal Crown Mortgage, Inc. ("Royal Crown Mortgage"), and Sergei Klyazmin ("Klyazmin") (collectively, "the Klyazmin Defendants"). ECF No. 169 ("Second MSJ"). This Motion is also fully briefed. ECF Nos. 178 ("Second Opp'n"), 194 ("Second Reply").

Upon consideration of all the papers submitted, the Court concludes that the matter is appropriate for decision without oral

United States District Court
For the Northern District of California

1  argument.  For the following reasons, the Court GRANTS IN PART and
2  DENIES IN PART Plaintiffs' Motion for Partial Summary Judgment
3  against Academy, and the Court DENIES Plaintiffs' Motion for
4  Partial Summary Judgment against the Klyazmin Defendants.

5

6  **II.  BACKGROUND**

7      The Court has previously detailed the procedural and factual
8  background of this dispute.  See ECF No. 129 ("Nov. 19, 2009
9  Order").  This Order will therefore assume familiarity with the
10 background of this case and will provide only a brief summary here.

11     In short, at the urging of Defendant Garrett Boyd ("Boyd"), a
12 friend of Plaintiffs' niece, Plaintiffs took out a loan in the
13 amount of $180,000 from Praveen Chandra ("Chandra") secured by
14 their real property located at 3120 San Andreas, Union City,
15 California.  Nov. 19, 2009 Order at 3.  Plaintiffs allege that Boyd
16 promised to pay them $25,000 if they took out the loan and held the
17 funds in escrow for sixty days so that Boyd could use the escrow
18 account to "show some money on paper" to help him obtain a loan to
19 purchase a $2.1 million property.  ECF No. 125 ("FAC") ¶ 10; Second
20 MSJ at 17.

21     Boyd, representing himself to be Plaintiffs' nephew, contacted
22 Klyazmin, a real estate broker and sole owner of Modo Realty and
23 Royal Crown Mortgage, to request a $180,000 loan against
24 Plaintiffs' property and a $2.1 million loan for Boyd's personal
25 use in purchasing another property.  Nov. 19, 2009 Order at 2-3;
26 Guillory Decl.[1] Ex. C ("Klyazmin Dep.") at 87:11-88:3.  Klyazmin's

27 _____

28 [1] Dorothy Guillory, attorney for Plaintiffs, filed a declaration,
   ECF No. 160, and a supplemental declaration, ECF No. 161, in

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   employee Jessica Skiff ("Skiff") then contacted Chandra and secured

2   his agreement to loan Plaintiffs $180,000 to be secured by their

3   Union City property.  Nov. 19, 2009 Order at 3.  Boyd was not a

4   party to the loan.  Id.

5       Academy served as the escrow agent for the loan.  Academy

6   prepared the Escrow Instructions, which provided that the funds

7   would be disbursed to Plaintiffs at the end of the escrow period.

8   Nov. 19, 2009 Order at 4, 12; Supp. Guillory Decl. Ex. 11 ("Escrow

9   Instructions").[2]  The instructions provided, in block capitals,

10  that "NO NOTICE, DEMAND OR CHANGE OF INSTRUCTIONS SHALL BE OF ANY

11  EFFECT IN THIS ESCROW UNLESS GIVEN IN WRITING BY ALL PARTIES

12  AFFECTED THEREBY."  Escrow Instructions at 2; Nov. 19, 2009 Order

13  at 4.  Nevertheless, on May 4, 2007, after receiving oral

14  instructions from Boyd, Academy wired the funds in escrow to Boyd's

15  bank account.  Nov. 19, 2009 Order at 5.

16      The loan came due on July 1, 2007.  Id. at 6.  Plaintiffs

17  refused to repay the loan claiming they never received the loan

18  funds.  Id.  They sued various entities, including Academy and the

19  Klyazmin Defendants, after Chandra attempted to foreclose on their

20  home due to their failure to repay the loan.  See FAC.  Plaintiffs

21  assert five claims against the Klyazmin Defendants: violations of

22  the Truth in Lending Act ("TILA") and the Real Estate Settlement

23  ─────────────────────────────────────────────

24  support of Plaintiffs' First MSJ.  She also filed a third
    declaration, ECF Nos. 170-172 ("Third Guillory Decl."), in support

25  of Plaintiffs' Second MSJ, and a fourth declaration, ECF No. 195
    ("Fourth Guillory Decl."), in support of Plaintiffs' Second Reply.

26

27  [2] Academy objects that the Escrow Instructions, along with all of
    Plaintiffs' evidence submitted in support of the First MSJ, is not
    properly before the Court because of various defects in the

28  Guillory Declarations.  First Opp'n at 3.  These objections are
    addressed in section IV.A.1 below.

3

1  Procedures Act ("RESPA"), breach of fiduciary duty, negligent

2  failure to supervise, and intentional infliction of emotional

3  distress.  Id.  Plaintiffs assert these same claims -- as well as a

4  claim for conversion -- against Academy.  Id.

5       In their first Motion, Plaintiffs seek summary adjudication of

6  their breach of fiduciary duty, conversion, and RESPA claims

7  against Academy.  First MSJ at 2.  In their second Motion,

8  Plaintiffs seek summary adjudication of their breach of fiduciary

9  duty and negligent supervision claims against the Klyazmin

10  Defendants.  Second MSJ at 2.

11

12  III. **LEGAL STANDARD**

13       "The standards and procedures for granting partial

14  summary judgment, also known as summary adjudication, are the

15  same as those for summary judgment." Mora v. Chem-Tronics,

16  Inc., 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  Entry of

17  summary judgment is proper "if the pleadings, the discovery

18  and disclosure materials on file, and any affidavits show that

19  there is no genuine issue as to any material fact and that the

20  movant is entitled to judgment as a matter of law." Fed. R.

21  Civ. P. 56(c).  The movant bears the initial burden of

22  demonstrating the absence of a genuine issue of fact.  See

23  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To

24  survive a motion for summary judgment, the responding party

25  must present competent evidence that creates a genuine issue

26  of material fact.  See Anderson v. Liberty Lobby, Inc., 477

27  U.S. 242, 248-52 (1986).  "The evidence of the nonmovant is to

28

4

1  be believed, and all justifiable inferences are to be drawn in

2  his favor." Id. at 255.

3

4  **IV.  DISCUSSION**

5      **A.  Plaintiffs' First Motion for Summary Adjudication**

6      In their first Motion, Plaintiffs seek partial summary

7  judgment against Academy Escrow on their claims for RESPA

8  violations, breach of fiduciary duty, and conversion.[3]  First

9  MSJ at 2.

10          1.  Academy's Evidentiary Objections

11      As a preliminary matter, Academy has raised numerous

12  evidentiary objections in its Opposition.  It has also filed a

13  separate document further explicating those objections.  ECF

14  No. 177-2.  As Civil Local Rule 7-3(b) requires evidentiary

15  objections to a motion to be contained within the opposition

16  brief, the Court only considers Academy's evidentiary

17  objections raised in their Opposition and disregards the

18  separate filing of objections.

19      In its Opposition, Academy argues that all of Plaintiffs'

20  evidence should be excluded on the grounds that Plaintiffs

21  have failed to properly authenticate or establish sufficient

22  foundation for their exhibits.  First Opp'n at 3, 10.

23      First, Academy argues that the authenticating

24  declarations filed by Plaintiffs' counsel do not comply with

25  the requirements for such declarations set forth in 28 U.S.C.

26

27  [3] Plaintiffs' Notice of Motion and Re-Notice of Motion stated that
they would seek summary judgment on their TILA claim.  See ECF Nos.

28  158, 164.  Plaintiffs admit that this was an error and they do not
seek summary judgment on that claim.  First Reply at 2.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   § 1746 because they do not include the language "under the
2   laws of the United States of America."  First Opp'n at 9.
3   Contrary to Academy's assertion, 28 U.S.C. § 1746 does not
4   require such language if declarations are executed within the
5   United States.  28 U.S.C. § 1746(2).  In the declarations at
6   issue, Plaintiffs' counsel states: "I certify under penalty of
7   perjury under the laws of the State of California that the
8   foregoing is true and correct."  Guillory Decl. at 3; Supp.
9   Guillory Decl. at 3.  The declarations were executed in
10  Oakland, California.  Id.  They meet the requirements set
11  forth in 28 U.S.C. § 1746.  This objection is OVERRULED.

12      Academy next contends that Plaintiffs' exhibits have not
13  been properly authenticated because Guillory's declarations do
14  not lay proper foundation to establish that the attached
15  exhibits -- deposition excerpts and various exhibits used
16  during depositions -- are what they purport to be.  First
17  Opp'n at 10.  Academy notes that Guillory's declarations do
18  not attest that the exhibits are "true and correct copies" and
19  do not indicate who excerpted the depositions or how the
20  excerpting process was done.  Id.

21      "A deposition or an extract therefrom is authenticated in
22  a motion for summary judgment when it identifies the names of
23  the deponent and the action and includes the reporter's
24  certification that the deposition is a true record of the
25  testimony of the deponent."  Orr v. Bank of America NT & SA,
26  285 F.3d 764, 774 (9th Cir. 2002).  Each of the deposition
27  excerpts attached to Guillory's declaration meets these
28  requirements.  See Guillory Decl. Exs. A-E.  Academy's

**United States District Court**
For the Northern District of California

1  objection is therefore OVERRULED with regard to the deposition

2  excerpts attached as exhibits A-E to the Guillory Declaration.

3      Next, Academy objects to Exhibit F attached to Guillory's

4  Supplemental Declaration, which contains documents used as

5  exhibits at depositions of the witnesses in this case.  These

6  documents include a number of email communications, as well as

7  documents from the escrow transaction such as the escrow

8  instructions, deed of trust, note secured by deed of trust,

9  and wire transfer receipts.  See Supp. Guillory Decl. Ex. F.

10  Academy contends that these documents have not been properly

11  authenticated.  First Opp'n at 10.  Most of these documents

12  are not necessary to Plaintiffs' Motion against Academy, and

13  the Court therefore does not address Academy's objections to

14  them.

15      However, one document in Exhibit F -- the Escrow

16  Instructions -- is necessary to Plaintiffs' Motion.  The Court

17  OVERRULES Academy's objection that the Escrow Instructions

18  have not been properly authenticated.  Federal Rule of

19  Evidence 901(a) provides that authentication requires

20  "evidence sufficient to support a finding that the matter in

21  question is what its proponent claims."  Fed. R. Evid. 901(a).

22  Thus, to comply with Rule 901(a), Plaintiffs must provide

23  evidence sufficient to support a finding that the Escrow

24  Instructions attached to Guillory's Supplemental Declaration

25  are an accurate copy of the Escrow Instructions produced by

26  Academy in relation to Plaintiffs' loan.  Plaintiffs meet this

27  relatively low burden in two steps.  First, Guillory's

28  Supplemental Declaration attests under penalty of perjury that

United States District Court
For the Northern District of California

1  the Escrow Instructions attached to her declaration are the

2  same Escrow Instructions that were introduced as Exhibit 11 at

3  depositions in this case.   Supp. Guillory Decl. ¶ 3.   Second,

4  in his deposition testimony, Larry Brantley testifies that

5  Exhibit 11, bearing the same Bates stamp as the document

6  submitted by Guillory, is an accurate copy of the Escrow

7  Instructions prepared in connection with his escrow account

8  and bearing his and his wife's initials and signatures.

9  Guillory Decl. Ex. B ("L. Brantley Dep.") at 78:6-25, 79:1-25.

10 Taken together, Guillory's Supplemental Declaration and Larry

11 Brantley's testimony are sufficient to support a finding that

12 the Escrow Instructions submitted by Plaintiffs in Exhibit F

13 are a true and correct copy of the instructions at issue in

14 this case.[4]

15         2.   <u>Plaintiffs' Third Claim for Violation of the</u>

16              <u>RESPA</u>

17         Plaintiffs' third claim alleges violation of the RESPA.[5]

18

19 _____

[4] The Court further notes that an identical copy of the Escrow
20 Instructions was submitted by Sheryl Traum, attorney for Praveen
   Chandra, as Exhibit 9-d to Traum's Declaration in support of
21 Chandra's Motion for Summary Judgment against Academy. ECF Nos.
   108, 109.  Academy did not object at that time.  The Court found
22 the Escrow Instructions admissible and relied heavily on them in
   awarding partial summary judgment against Academy in its November
23 19, 2009 Order.  <u>See</u> Nov. 19, 2009 Order at 4, 9.  The law of the
   case doctrine bars Academy from relitigating the admissibility of
24 the contents of this document to the extent they have already been
   incorporated into the Court's November 19, 2009 Order.

25
[5] Academy contends that Plaintiffs' request for summary
26 adjudication of their RESPA claim is not properly before the Court
   because Plaintiffs' Notice of Motion and Re-Notice of Motion did
27 not state that they would seek summary judgment on that claim.
   First Opp'n at 2.  The Court rejects this argument.  Plaintiffs'
28 Memorandum of Points and Authorities, filed one day after their
   Notice of Motion, makes unmistakably clear that Plaintiffs move for

**United States District Court**
For the Northern District of California

The RESPA requires that lenders and their non-exclusive agents
provide borrowers with a good faith estimate of costs, known
as an "estimated HUD-1," and a final settlement statement,
known as a "final HUD-1."  12 U.S.C. §§ 2603(b), 2604(c); 24
CFR §§ 3500.7, 3500.8; <u>see also</u> <u>Plaza Home Mortg., Inc. v. N.</u>
<u>American Title Co., Inc.</u>, 184 Cal. App. 4th 130, 133 n.1 (Ct.
App. 2010).  Plaintiffs contend that Academy violated the
RESPA by failing to provide them with these documents.  First
MSJ at 23.  Academy does not contend otherwise.

It is well established that the RESPA does not provide a
private right of action for violations of the disclosure
provisions in 12 U.S.C. §§ 2603-2604.  <u>See</u>, <u>e.g.</u>, <u>Bloom v.</u>
<u>Martin</u>, 865 F. Supp. 1377, 1385 (N.D. Cal. 1994) (holding no
private right of action exists under 12 U.S.C. § 2403);
<u>Spurlock v. Carrington Mortg. Servs.</u>, No. 09-cv-2273, 2010
U.S. Dist. LEXIS 80221, *26-27 (N.D. Cal. Aug. 4, 2010)
(holding no private right of action exists under 12 U.S.C. §
2604(c) or any related regulations).  Plaintiffs' third claim
for RESPA violations is therefore DISMISSED as to all
Defendants.

> 3.  <u>Plaintiffs' Fifth Claim for Breach of Fiduciary</u>
>     <u>Duty</u>

Plaintiffs move for summary adjudication of their fifth
claim for breach of fiduciary duty.  First MSJ at 15.  Escrow
holders owe fiduciary duties to all parties to the escrow,
including the duty to strictly comply with the escrow

---

summary adjudication on their RESPA claim.  Academy therefore had
ample notice of the grounds for Plaintiffs' motion.

**United States District Court**
For the Northern District of California

instructions.  <u>Kangarlou v. Progressive Title Co., Inc.</u>, 128
Cal. App. 4th 1174, 1179 (Ct. App. 2005).  Here, there can be
no dispute that the Brantleys were parties to the escrow.  L.
Brantley Dep. at 78:6-25, 79:1-25; Escrow Instructions.
Moreover, as the Court already determined in its November 19,
2009 Order, there is no genuine issue that Academy failed to
comply with the escrow instructions when it disbursed the
funds to Boyd.  Nov. 19, 2009 Order at 13.  Academy therefore
breached its fiduciary duties to Plaintiffs.  Plaintiffs have
offered evidence that the disbursement to Boyd caused them
injury.  As a result of Academy's disbursement of the funds to
Boyd, Plaintiffs were unable to repay the loan and were
subjected to foreclosure proceedings.  Guillory Decl. Ex. A
("E. Brantley Dep.") at 88:5-25, 89:1-11.  Plaintiffs claim an
assortment of resultant damages, as discussed below.  While
there are genuine issues of fact as to the <u>amount</u> of damages
Plaintiffs incurred, there is no genuine issue that they
incurred at least some damages as a result of Academy's
actions.  For example, there is no genuine issue of fact that
they were forced to pay costs and attorneys' fees to defend
against the foreclosure proceedings.  Guillory Decl. ¶ 3.

Therefore, the Court GRANTS Plaintiffs' motion for
summary adjudication as to liability against Academy on their
fifth claim for breach of fiduciary duty.

4.   <u>Plaintiffs' Eighth Claim for Conversion</u>

Plaintiffs also seek summary adjudication against Academy
of their eighth claim for conversion.  First MSJ at 20.
Conversion is an intentional tort that consists of the

**United States District Court**
For the Northern District of California

1   wrongful exercise of dominion or control over the property of

2   another.  <u>Farmers Ins. Exch. v. Zerin</u>, 53 Cal. App. 4th 445,

3   451 (Ct. App. 1997) (internal quotations omitted).  Three

4   elements are required to establish a cause of action for

5   conversion: (1) the plaintiff's ownership or right to

6   possession of the property at the time of the conversion; (2)

7   the defendant's conversion by a wrongful act or disposition of

8   property rights; and (3) damages.  <u>Id.</u>  It is not necessary

9   that there be a manual taking of the property; it is only

10  necessary to show an assumption of control or ownership over

11  the property.  <u>Id.</u>  Money can be the subject of an action for

12  conversion if a specific sum capable of identification is

13  involved.  <u>Id.</u> at 452.

14      Although it is an intentional tort, conversion does not

15  require a showing of wrongful intent.  Rather, the intent

16  required for conversion is merely "an intent to exercise a

17  dominion or control over the goods which is in fact

18  inconsistent with the plaintiff's rights." <u>Varela v. Wells</u>

19  <u>Fargo Bank</u>, 15 Cal. App. 3d 741, 749-50 (Ct. App. 1971)

20  (internal quotations omitted).  As stated in <u>Varela</u>:

21          The foundation for the action of conversion rests
            neither in the knowledge nor the intent of the
22          defendant.   It   rests   upon   the   unwarranted
            interference by defendant with the dominion over
23          the property of the plaintiff from which injury
            to the latter results. Therefore, neither good
24          nor  bad  faith,  neither  care  nor  negligence,
            neither knowledge nor ignorance, are of the gist
25          of the action.

26  <u>Id.</u> (internal quotations omitted).

27      Plaintiffs contend that, by distributing the escrow funds

28  to Boyd, Academy wrongfully exercised control over the funds,

11

**United States District Court**
For the Northern District of California

1    depriving Plaintiffs of their right to possession and

2    resulting in their injury. First MSJ at 21-22. The Court

3    finds that the evidence supports Plaintiffs' claim and that no

4    genuine issue of fact exists with regard to Academy's

5    liability for conversion.

6         First, there is no genuine issue of fact that Plaintiffs

7    had the right to possession of the escrow funds at the time

8    the funds were transferred to Boyd. Plaintiffs were the

9    borrowers entitled to the loan funds under a note and deed of

10   trust securing their real property, and they signed written

11   escrow instructions directing the disbursement of the funds to

12   themselves. L. Brantley Dep. at 78:6-25, 79:1-25; Escrow

13   Instructions. The Escrow Instructions provide that all "funds

14   due the respective parties herein are to be mailed to the

15   addresses set out below their respective signatures, unless

16   otherwise instructed." Escrow Instructions at 2; Nov. 19,

17   2009 Order at 4. The same document identifies Larry Brantley

18   and Ellen Brantley as the borrowers, and it provides their

19   mailing address. Id. at 3.

20        Second, there is no genuine issue of fact that Academy

21   intentionally exercised control over the funds in a manner

22   that deprived Plaintiffs of their right of possession.

23   Academy admits that it wired the funds to Boyd's bank account.

24   Guillory Decl. Ex. D ("Lyon Dep.") at 224:19-225:16. Academy

25   also admits that one of its agents manually entered Boyd as

26   the recipient. Id. at 216:13-217:21. Thus, Academy's

27   exercise of control over the funds was an intentional act.

28

United States District Court
For the Northern District of California

1   Lastly, there is no genuine issue of fact that Academy's

2   actions caused injury to Plaintiffs.  When Chandra sought to

3   have his loan repaid by Plaintiffs, they were unable to do so

4   because the loan funds had never been sent to them.  L.

5   Brantley Dep. at 102:4-11.  Plaintiffs were therefore

6   subjected to foreclosure proceedings and were forced to pay

7   costs and attorneys' fees to defend against the foreclosure.

8   Guillory Decl. ¶ 3.

9   Academy does not offer evidence to contradict Plaintiffs'

10  evidence cited above.  Rather, Academy argues that Plaintiffs'

11  conversion claim is barred by the doctrines of the law of the

12  case and collateral estoppel because the Court denied summary

13  judgment on a conversion claim brought by Chandra against

14  Academy in its November 19, 2009 Order.  First Opp'n at 11.

15  The Court disagrees.  The law of the case doctrine bars a

16  court from reconsidering an issue already decided by the same

17  court, or a higher court, in the identical case.[6]  United

18  States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).  The

19  issue decided in the Court's November 19, 2009 Order differs

20  from the issue decided here.  Unlike Plaintiffs, Chandra

21  alleged that Academy was liable for conversion because it

22  "participated in Boyd's theft of the loan funds."  ECF No. 107

23  ("Chandra's MSJ").  In denying summary adjudication of

24  _____

25  [6] The doctrine of collateral estoppel is inapplicable in this
    context because, among other reasons, it bars relitigation of
    certain issues decided in prior actions.  See United States v.

26  Hernandez, 572 F.2d 218, 220 (9th Cir. 1978) (explaining that the
    collateral estoppel doctrine holds that "[w]hen an issue of fact or

27  law is actually litigated and determined by a final and valid
    judgment, and the determination is essential to the judgment, the

28  determination is conclusive in a subsequent action between the
    parties, whether on the same or a different claim").

Chandra's conversion claim, the Court held that "there are
genuine issues of material fact as to whether Academy Escrow
participated in Boyd's theft of the funds because Boyd has not
been found guilty of theft and the evidence suggests Academy
Escrow had no prior knowledge that Boyd would spend the
money." Nov. 19, 2009 Order at 15. Here, Plaintiffs do not
allege that Academy participated in a theft at all. Rather,
they allege that the act of releasing escrow funds to Boyd was
itself a wrongful exercise of control over Plaintiffs'
property, which deprived Plaintiffs of their right to possess
the property and thus constituted conversion. First MSJ at
21-22. The Court has not previously decided this issue.

Academy also points to testimony by Angie Lyon, Academy's
escrow officer in charge of Plaintiffs' transaction, stating
that she did not know that Boyd had lied about being related
to Plaintiffs. First Opp'n at 12. Academy presumably offers
this testimony to show that it lacked knowledge of Boyd's
misrepresentations. While this may have been relevant to a
claim such as Chandra's, which alleged that Academy knowingly
participated in Boyd's theft, it has no relevance to
Plaintiffs' conversion claim.

Accordingly, the Court GRANTS summary adjudication against
Academy as to liability on Plaintiffs' eighth claim for
conversion.

5.   Damages

Plaintiffs allege the following damages.[7]   First, they

_____

[7] The Court again rejects Academy's argument that Plaintiffs did
not sufficiently clarify in their Notice of Motion that they were

**United States District Court**
For the Northern District of California

seek $200,000 due to the alleged lost use of equity in their home.  First MSJ at 25.  They assert that they relied on home equity loans to pay living expenses in the past and have been unable to obtain such loans since foreclosure proceedings were implemented against them.  E. Brantley Dep. at 45:1-5, 88:21-89:2.  Second, they seek attorneys' fees and costs from the instant lawsuit and from the prior lawsuit brought by Plaintiffs to enjoin the foreclosure proceedings against them.  Id. at 26-27.  Third, they seek prejudgment interest at a rate of ten percent per annum from the date on which the funds were disbursed to Boyd.  Id. at 27.  Finally, it is unclear whether they also seek additional damages due to the humiliation and embarrassment they allegedly suffered because of the foreclosure action.  Id. at 13.

The Court finds that genuine issues of fact exist as to the amount of damages Plaintiffs are entitled to from Academy.  Plaintiffs have provided no basis for their calculation of $200,000 in damages from lost use of equity.  They have further stated that the attorneys' fees and costs associated with this litigation are still accruing.  Guillory Decl. ¶ 4.  Furthermore, Plaintiffs have not clarified whether they seek further damages for their emotional distress.  Therefore, the Court finds that summary adjudication as to damages is improper and Plaintiffs shall prove their damages at trial.

seeking summary adjudication not just as to liability but as to damages as well.  First Opp'n at 13.  The Court finds that Plaintiffs' brief in support of their Motion, filed the following day, provided Academy with sufficient notice of Plaintiffs' intentions.

1  Plaintiffs' request for summary adjudication as to damages is

2  DENIED.

3      **B.    Plaintiffs' Second Motion for Summary Adjudication**

4          In their second Motion, Plaintiffs seek summary

5  adjudication of their breach of fiduciary duty and negligent

6  failure to supervise claims against the Klyazmin Defendants.

7  Second MSJ at 2.  As a preliminary matter, the Klyazmin

8  Defendants have filed a separate document stating objections

9  to the Third Guillory Declaration.  ECF No. 180.  This filing

10 violates Civil Local Rule 7-3(b), which requires all

11 evidentiary objections to a motion to be contained within the

12 opposition brief.  Accordingly, the Court disregards this

13 filing and only considers evidentiary objections raised in the

14 Opposition.

15      1.   Plaintiffs' Fifth Claim for Breach of Fiduciary

16           Duty

17         Plaintiffs first seek summary adjudication of their fifth

18 claim against the Klyazmin Defendants for breach of fiduciary

19 duty.  Second MSJ at 2.  The elements of a cause of action for

20 breach of fiduciary duty are: (1) existence of a fiduciary

21 duty; (2) breach of the fiduciary duty; and (3) damage

22 proximately caused by the breach.  Stanley v. Richmond, 35

23 Cal. App. 4th 1070, 1086 (Ct. App. 1995).  Plaintiffs contend

24 that the Klyazmin Defendants served as their real estate

25 agents and mortgage brokers for the $180,000 loan transaction

26 and owed Plaintiffs fiduciary duties as such.  FAC ¶ 12;

27 Second MSJ at 15-16.  The Klyazmin Defendants do not dispute

28 that they were brokers for the Brantleys and owed them

**United States District Court**
For the Northern District of California

1  fiduciary duties.  Rather, they contend that they did not

2  breach any duties owed to Plaintiffs and, in the alternative,

3  that even if they did breach fiduciary duties owed to

4  Plaintiffs, any such breach was not the proximate cause of

5  Plaintiffs' damages.  Second Opp'n at 9, 11.

6      When a real estate agent or mortgage broker acts as a

7  borrower's agent in negotiating a loan, the agent or broker

8  owes a variety of fiduciary duties to the borrower.  Wyatt v.

9  Union Mortg., 24 Cal. 3d 773, 782 (1979).  Among these duties

10 are the duty to disclose all material facts concerning the

11 transaction that might affect the principal's decision and the

12 duty to refrain from representation of multiple parties in the

13 same transaction without full disclosure to and consent from

14 all principals involved.  Loughlin v. Idora Realty Co., 259

15 Cal. App. 2d 619, 629 (Ct. App. 1968).  The broker or agent

16 also has a duty to investigate the material facts of the

17 transaction; "he cannot accept information received from

18 others as being true, and transmit it to the principal,

19 without either verifying the information or disclosing to the

20 principal that the information has not been verified."

21 Salahutdin v. Valley of Calif., Inc., 24 Cal. App. 4th 555,

22 562 (Ct. App. 1994).  A real estate agent or broker breaches

23 his or her duties by failing to exhibit the degree of care and

24 skill ordinarily shown by professionals in the industry.

25 Carleton v. Tortosa, 14 Cal. App. 4th 745, 754-55 (Ct. App.

26 1993).  The degree of care and skill required to fulfill a

27 professional duty ordinarily is a question of fact that may

28 require testimony by professionals in the field if the matter

**United States District Court**
For the Northern District of California

1   is within the knowledge of experts only.[8]   Id.; see also

2   Carson v. Facilities Development Co., 36 Cal.3d 830, 844-845

3   (Ct. App. 1984).

4          Plaintiffs contend that the Klyazmin Defendants breached

5   their fiduciary duties in three ways.  First, Plaintiffs

6   allege that they breached the duty to disclose material facts

7   by failing to inform Plaintiffs that Boyd's attempt to secure

8   financing to purchase the $2.1 million property had failed

9   prior to Plaintiffs executing their loan agreement with

10  Chandra.  Second MSJ at 17; Second Reply at 7.  Plaintiffs

11  offer deposition testimony showing that the Klyazmin

12  Defendants knew that the sole reason for Plaintiffs pursuing

13  the loan from Chandra was to assist Boyd in purchasing the

14  $2.1 million property (Skiff Dep. at 79:21-25, 80:1-25, 121:1-

15  25), that the Klyazmin Defendants were unable to secure

16  financing for Boyd's $2.1 million loan (Skiff Dep. at 81:7-

17  18), and that the Klyazmin Defendants nevertheless proceeded

18  to obtain the $180,000 loan for the Brantleys without

19  informing them that they had been unable to secure Boyd's $2.1

20  ──────────────────────

21  [8] The Klyazmin Defendants contend that expert testimony is always
    required to establish a professional standard of care.  Second

22  Opp'n at 12.  Accordingly, they assert that summary adjudication
    should be granted in their favor because Plaintiffs have not

23  produced expert testimony regarding the appropriate standard of
    care in this case.  Id. at 23.  As Carleton and Carson make clear,

24  the Klyazmin Defendants misconstrue the law on this point.  While
    expert testimony may be necessary to establish professional

25  negligence, it is not a per se requirement.  14 Cal. App. 4th at
    754-55.  Lysick v. Walcom, 258 Cal. App. 2d 136, 155-56 (Ct. App.

26  1968), on which the Klyazmin Defendants rely, does not hold
    otherwise.  The Lysick court held that, where the trial court had

27  decided that expert testimony was required to determine the
    applicable standard of care based on the facts of the case, the

28  trial court later erred by instructing the jury that it could
    reject the expert testimony if it chose to do so.  Id.

                                    18

million loan (E. Brantley Dep. at 186:2-15).

Second, Plaintiffs assert that, in addition to representing Plaintiffs, the Klyazmin Defendants represented Chandra regarding the $180,000 loan and represented Boyd in his quest to secure financing for the $2.1 million property. Plaintiffs allege that this multiple representation without obtaining Plaintiffs' consent violated the Klyazmin Defendants' duty of undivided loyalty. Second MSJ at 17; Reply at 8. As evidence in support of this claim, Plaintiffs cite Skiff's testimony that she considered both the Brantleys and Chandra to be her clients with regard to the loan transaction. Skiff Dep. at 71:6-25, 72:1-5.[9] Perplexingly, they also cite Skiff's testimony that she did not consider Boyd to be her client with regard to the transaction. Skiff Dep. at 109:6-16. Plaintiffs assert that Skiff did not inform the Brantleys of any dual representation, but the testimony they cite to support this claim is silent on the matter. Reply at 8 (citing Skiff Dep. at 67:4-24, 68-1-10). The cited testimony establishes that Skiff knew she had a duty to disclose dual representation, but it does not establish that she failed to do so.

Third, Plaintiffs allege that the Klyazmin Defendants breached their duty to investigate material facts of the transaction by failing to investigate Boyd's claims that he was Plaintiffs' nephew or that he was their real estate broker. Second MSJ at 18. They cite Skiff's testimony that

---

[9] Plaintiffs also cite Skiff Dep. at 95:24-25, 96:1-5. Second Reply at 8. However, these portions of Skiff's testimony are not included in the excerpt provided by Plaintiffs.

**United States District Court**
For the Northern District of California

1    she never took any steps to confirm Boyd's representations.

2    Skiff Dep. at 81:19-25, 82:1-3, 83:14-25.

3         The only evidence the Klyazmin Defendants offer to

4    counter Plaintiffs' assertion of breach is a sworn report and

5    declaration from their expert witness Harold A. Justman

6    opining that their conduct comported with industry custom and

7    practice and did not constitute a breach of their fiduciary

8    duties.  See ECF No. 181 ("Justman Report").  However, as

9    Plaintiffs note in their Second Reply, Justman's testimony is

10   not admissible evidence in support of the Opposition because

11   the Klyazmin Defendants did not comply with the disclosure

12   requirements of Federal Rule of Civil Procedure 26(a)(2).

13        Under Rule 26(a)(2)(A), a party must disclose the

14   identity of any witness it may use at trial to present expert

15   testimony.  Unless otherwise stipulated or ordered by the

16   court, the disclosure must be accompanied by a written report

17   prepared and signed by the expert witness and containing,

18   among other things, a complete statement of all opinions the

19   witness will express and the basis for them.  Fed. R. Civ. P.

20   26(a)(2)(B).  These disclosures must be made by the deadline

21   set by the court.  Fed. R. Civ. P. 26(a)(2)(D).  If a party

22   fails to make the required disclosures by the court-imposed

23   deadline, then it may not use the witness to supply evidence

24   on a motion, at a hearing, or at a trial, unless the failure

25   was substantially justified or harmless.  Fed. R. Civ. P.

26   37(c)(1).

27        On May 13, 2009, the Klyazmin Defendants disclosed their

28   intention to offer Justman's opinions as expert testimony at

20

trial.   Fourth Guillory Decl. ¶ 3, Ex. A ("Expert Witness
Designation").   The Expert Witness Designation stated that
Justman would "offer opinions regarding the conduct of the
parties and their agents involved with the various real estate
transactions at issue in this case."  Id. at 2:11-12.   It
further stated that Justman would opine on such matters as
whether the Klyazmin Defendants owed any duty to Plaintiffs in
the transactions at issue, the applicable standard of care,
whether the Klyazmin Defendants breached any duty owed to
Plaintiffs, whether Plaintiffs suffered damages, and whether
Plaintiffs acted reasonably.   Id. at 2.   After producing the
Expert Witness Designation, the Klyazmin Defendants failed to
provide Plaintiffs with a written report prepared by Justman
containing a complete statement of his opinions and the basis
and reasons for them before the discovery deadline set by the
Court.  Fourth Guillory Decl. ¶ 3.   Discovery closed on
December 1, 2010.  ECF No. 148.  The Klyazmin Defendants
finally filed Justman's report along with their Opposition on
January 28, 2011.  They have offered no justification for
their failure to disclose the report during discovery.   The
Court finds that this failure was not harmless, as it deprived
Plaintiffs of the opportunity to depose Justman on the basis
for his opinions and seek rebuttal testimony if desired.
Accordingly, the Court finds Justman's testimony inadmissible.

       Aside from Justman's testimony, Defendants do not offer
evidence to support their argument that they did not breach
any duties owed to Plaintiffs.   Instead, the bulk of their
argument contends that even if they did breach fiduciary

**United States District Court**
For the Northern District of California

1    duties owed to Plaintiffs, any such breach was not a proximate

2    cause of Plaintiffs' injuries. Second Opp'n at 9-12. They

3    argue that Academy's disbursement of the funds to Boyd was the

4    sole proximate cause of harm to Plaintiffs.[10] Id. By

5    contrast, Plaintiffs offer two theories of how the Klyazmin

6    Defendants' actions caused Plaintiffs' damages. First, they

7    contend that if the Klyazmin Defendants had informed them that

8    Boyd did not obtain financing for the $2.1 million loan, they

9    would not have proceeded to borrow the $180,000 from Chandra

10    because the sole purpose for doing so was to assist Boyd with

11    his purchase. Second MSJ at 17. In support of this theory,

12    Plaintiffs cite Larry Brantley's testimony stating the same.

13    L. Brantley Dep. at 100:9-16. Second, Plaintiffs argue that

14    Skiff's failure to investigate Boyd's misrepresentations

15    "enabled Boyd to pass himself off as the Brantleys' nephew and

16    to obtain the monies from escrow." Second Reply at 9.

17       Causation is generally a question of fact reserved for

18    the jury. Ulloa v. McMillin Real Estate & Mortg., Inc., 149

19    Cal. App. 4th 333, 337 (Ct. App. 2007). To prove proximate

20    cause in a breach of fiduciary duty claim, the plaintiff must

21    show that the defendant's conduct was "a substantial factor"

22    in causing the plaintiff's harm. Stanley, 35 Cal. App. at

23

24    [10] The Klyazmin Defendants imply that this Court, by finding
     Academy liable for breach of fiduciary duty to Chandra in its

25    November 19, 2009 Order, held that Academy's actions were the sole
     proximate cause of "the damages in this action." Second Opp'n at

26    13. This misconstrues the Court's holding. The Court held that
     Academy's actions were a proximate cause of Chandra's injury, and

27    the Court holds today that Academy's actions were a proximate cause
     of Plaintiffs' injury. These holdings do not preclude a finding

28    that actions of other defendants also proximately caused injury to
     Plaintiffs.

**United States District Court**
For the Northern District of California

1095.  Here, Plaintiffs' evidence has not met their burden of
proving that no genuine issue of material fact exists under
this standard of causation.  Plaintiffs' causation arguments
involve hypothetical determinations of what Plaintiffs and
other parties would have done if Skiff had taken certain
actions.  Reasonable jurors could disagree about these
determinations.  The jury should have the opportunity to hear
Plaintiffs' testimony and evaluate these arguments firsthand.

For the foregoing reasons, the Court DENIES Plaintiffs'
motion for summary adjudication of Plaintiffs' claim against
the Klyazmin Defendants for breach of fiduciary duty.

> 2.   <u>Plaintiffs' Sixth Claim for Negligent
> Supervision</u>

Lastly, Plaintiffs seek summary adjudication of their
claim against the Klyazmin Defendants for negligent failure to
supervise.  Second MSJ at 18.  An employer is liable for
negligent supervision of an employee if it "knew or should
have known that hiring the employee created a particular risk
or hazard, and that particular harm materializes."  <u>Delfino v.
Agilent Tech., Inc.</u>, 145 Cal. App. 4th 790, 815 (Ct. App.
2006).

Plaintiffs allege that Klyazmin negligently failed to
supervise Skiff, and that as a result Skiff's actions --
specifically her failure to disclose that she was representing
multiple parties to the transaction and to inform Plaintiffs
that Boyd's attempt to secure funding for the $2.1 million
property had failed -- injured Plaintiffs.  Second MSJ at 19.

**United States District Court**
For the Northern District of California

1    Skiff's alleged actions underlying this claim are the same

2   actions that Plaintiffs allege constituted a breach of fiduciary

3   duty.  As explained above, a genuine issue of material fact exists

4   as to whether these actions were the proximate cause of any injury

5   to Plaintiffs.  Therefore, at a minimum, a genuine issue of fact

6   exists here as to whether Klyazmin's alleged failure to properly

7   supervise Skiff was the proximate cause of any injury to

8   Plaintiffs, i.e., whether Klyazmin's actions led any "particular

9   harm [to] materializ[e]."  <u>Agilent</u>, 145 Cal. App. 4th at 815.

10  Summary adjudication of Plaintiffs' negligent supervision claim

11  against the Klyazmin Defendants is therefore inappropriate.

12   Accordingly, the Court DENIES Plaintiffs' motion for summary

13  adjudication of their negligent supervision claim against the

14  Klyazmin Defendants.

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs Larry Brantley and Ellen Brantley's Motion for Summary Adjudication against Defendant Academy Escrow is GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED in favor of Plaintiffs as to liability only with regard to Plaintiffs' fifth claim for breach of fiduciary duty and eighth claim for conversion against Academy Escrow.  The Motion is DENIED as to damages.  Plaintiffs shall prove their damages at trial. Plaintiffs' third claim for violation of the RESPA is not a cognizable claim and is therefore DISMISSED with regard to all Defendants.

Plaintiffs' Motion for Summary Adjudication against Modo Realty, Inc., Royal Crown Mortgage, Inc., and Sergei Klyazmin is DENIED.


IT IS SO ORDERED.


Dated: April 1, 2011

_____
UNITED STATES DISTRICT JUDGE