1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LARRY TYRONE BRANTLEY, SR., and ELLEN BRANTLEY,<br><br>        Plaintiffs,<br><br>        v.<br><br>GARRETT BOYD, SERGEI KLYAZMIN, MODO REALTY, INC., ROYAL CROWN MORTGAGE, INC., PRAVEEN CHANDRA, ACADEMY ESCROW, and SCHWARTZ & FENSTER P.C.<br><br>        Defendants. | Case No. 07-cv-06139 NC<br><br>**REFERRAL FOR REASSIGNMENT WITH RECOMMENDATION TO GRANT MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 311 |

This case arises out of defendants' alleged scheme to lure plaintiffs Larry and Ellen Brantley into borrowing $180,000 against their home and investing it in a sham real estate deal. The Brantleys have settled with all but one defendant. They now move for default judgment under Federal Rule of Civil Procedure 55(b) against the remaining defendant, Garrett Boyd. Because Boyd has not consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), the Court REFERS this matter for REASSIGNMENT to a district court judge. The Court also RECOMMENDS that the district court GRANT plaintiffs' motion for default judgment and enter judgment against defendant Garrett Boyd in the sum of $144,300.

1

# I. BACKGROUND

2    **A.    The Parties**

3        Plaintiffs Larry Tyrone Brantley and Ellen Brantley are husband and wife, and

4    owners of a property in Union City, California.  Brantleys' First Amended Complaint

5    ("FAC") ¶ 1, Dkt. No. 125 at 2.  Defendant Garrett Boyd, a licensed real estate agent,

6    resides in Oakland, California and does business in Alameda County, California.

7    *Id.* ¶ 2; Boyd's Answer to Brantleys' Original Complaint, Dkt. No. 65 at 1.  Defendant and

8    cross-claimant Sergei Klyazmin is the president, sole owner, designated officer, and

9    employing broker of defendants and cross-claimants, Modo Realty, Inc. and Royal Crown

10   Mortgage, Inc., both of which do business in Alameda County, California.

11   FAC ¶¶ 3, 4; Klyazmin's, Modo's and Royal Crown's Answer to Brantleys' FAC, Dkt. No.

12   157 at 2.  Defendant and cross-claimant Academy Escrow is an independent escrow

13   company doing business in Alameda County, California.  FAC ¶ 5; Academy's Answer to

14   FAC, Dkt. No. 156 at 2.  Defendant and cross-claimant Praveen Chandra is a private lender

15   doing business in Alameda County, California.  FAC ¶ 6.  Defendant and cross-claimant

16   Schwartz & Fenster is a professional law corporation, debt collector, foreclosure trustee,

17   and agent retained by Chandra to give legal advice and counsel, collect debts, and institute

18   foreclosure proceedings.  FAC ¶ 7; Schwartz & Fenster's Answer to FAC, Dkt. No. 6 at 2.

19   Schwartz & Fenster does business in Alameda County, California.  *Id.*

20   **B.    The Facts Alleged in the First Amended Complaint**

21       In February 2007, the Brantleys met defendant Garrett Boyd through Monique

22   Douthit, the mother of Ms. Brantley's grandniece and grandnephew.  FAC ¶ 9.  Boyd

23   convinced the Brantleys to refinance their home for $180,000, and to hold the money in

24   escrow for about sixty days so that Boyd could "show money on paper" to secure financing

25   to purchase a $2.1 million property for himself.  *Id.* ¶¶ 10, 12.  Boyd claimed that the

26   Brantleys' money would sit in escrow without being touched, be repaid to the lender at the

27   end of the escrow period, and be used only to secure financing.  *Id.*  In exchange for

28   //

holding the money in escrow, Boyd claimed that he would pay the Brantleys $25,000 and Douthit a finder's fee of $4,000. *Id.*

On April 10, 2007, Boyd realized he would be unable to secure financing, and no longer needed to "show money on paper." *Id.* ¶ 12. Despite knowledge of this, Boyd did not disclose this information to the Brantleys. *Id.* Rather, Boyd, along with Klyazmin, Modo, and Royal Crown, opened an escrow account with Academy. *Id.* ¶ 13.

On April 24, 2007, Chandra agreed to loan the Brantleys $180,000 against their home. *Id.* ¶ 15. On the same day, Academy prepared the escrow instructions, which provided that the $180,000 would only be disbursed to the Brantleys at the end of the escrow period, and that any change of instructions must be made in writing. *Id.* ¶ 18. On May 4, 2007, Chandra sent $180,000 to Academy's escrow account. *Id.* ¶ 23. Academy immediately wired the funds in escrow directly to Boyd's bank account. *Id.*

When the loan came due on June 28, 2007, Chandra demanded that the Brantleys repay. *Id.* ¶ 25. Chandra instituted non-judicial foreclosure proceedings against the Brantleys in Alameda County Superior Court sometime after August 14, 2007. *Id.* ¶ 26. As a result of Boyd's conduct, the Brantleys allege monetary losses, lost equity, pain and suffering, and emotional distress. *Id.* ¶ 28. The Brantleys bring claims of conversion and intentional infliction of emotional distress against Boyd. *Id.* ¶¶ 54-61.

**C.  Procedural History**

On November 9, 2007, the Brantleys filed an action against all defendants in the Superior Court of California, County of Alameda. Dkt. No. 1 at 2. Chandra removed the action to federal court on December 6, 2007 because the Brantleys claimed violations of federal laws over which federal courts would have original jurisdiction. Dkt. No. 1. On January 7, 2009, Boyd filed an answer to the Brantleys' original complaint. Dkt. No. 65. On the same day, Boyd's attorney also filed a motion to withdraw, which Judge Conti granted on February 17, 2009. Dk. No. 68; Dkt. No. 77.

*//*

1
2
3

On October 7, 2009, Judge Conti granted the Brantleys' motion to amend their complaint.  Dkt. No. 122 at 2.  The Brantleys filed their first amended complaint on September 13, 2009.  Dkt. No. 125.  Boyd never filed an answer.

4
5
6
7
8

On March 24, 2011, the Brantleys filed a motion for entry of default against Boyd. Dkt. No. 191.  Four days later, the clerk entered entry of default against Boyd.  Dkt. No. 193.  On January 29, 2013, the Brantleys moved for default judgment.  Dkt. No. 311.  No opposition to the motion for default judgment has been filed by Boyd.  The Brantleys have settled with all other defendants.  Dkt. No. 311 at 1.

9

Judge Conti reassigned the case to this Court on May 29, 2012.  Dkt. No. 277.

10

## II. STANDARD OF REVIEW

11
12
13
14
15
16
17
18
19
20
21
22

Default may be entered against a party who fails to plead or otherwise defend an action and against whom a judgment for affirmative relief is sought.  Fed. R. Civ. P. 55(a). After entry of default, the Court has discretion to grant default judgment on the merits of the case.  Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In deciding whether to grant default judgment, the Court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

23

## III. DISCUSSION

24

**A.    Jurisdiction**

25
26
27

In considering whether to enter a default judgment, a district court first must determine whether it has jurisdiction over the parties and the subject matter.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

28

//

1

### 1.    Subject Matter Jurisdiction

2       Federal courts shall have original jurisdiction over "all civil actions arising under the

3  Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Federal courts may

4  exercise "supplemental jurisdiction over all other claims that are so related to claims in the

5  action within such original jurisdiction that they form part of the same case or controversy."

6  28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)

7  (holding that the federal courts have subject matter jurisdiction where "[t]he state and

8  federal claims . . . derive from a common nucleus of operative fact").  It is within the

9  Court's discretion to exercise supplemental jurisdiction over state law claims if all federal

10 claims are settled and dismissed.  *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th

11 Cir. 1991).  The Court's discretion "is dependent upon what will best accommodate the

12 values of economy, convenience, fairness, and comity."  *Id.* (internal citation and quotation

13 marks omitted); *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1016 (N.D. Cal.

14 2012) (exercising supplemental jurisdiction over plaintiff's state law claims under

15 28 U.S.C. § 1367(c)(3) despite dismissal of plaintiff's sole federal cause of action because it

16 best served judicial economy, convenience, fairness and comity).

17       Here, the Brantleys alleged violations of 15 U.S.C. § 1601, the Truth In Lending Act,

18 15 U.S.C. § 1639, the Home Ownership and Equity Protection Act, and 12 U.S.C. § 2601,

19 the Real Estate Settlement Procedure Act, against Chandra, Academy, Klyazmin, Modo,

20 and Royal Crown.  FAC ¶¶ 29-38.  Further, the Brantleys alleged violations of 15 U.S.C.

21 § 1692, the Fair Debt Collection Practices Act, against Schwartz & Fenster.  *Id.* ¶¶ 39-42.

22 The Court has subject matter jurisdiction to adjudicate these claims because they arise out

23 of federal law.  The Brantleys' state law claims against Boyd arise out of the same "nucleus

24 of operative fact," namely, the allegedly fraudulent real estate transaction orchestrated by

25 Boyd, under 28 U.S.C. § 1367(a).

26       Although the original plaintiffs have settled with all other defendants, because this

27 action has been pending for over five years and because this Court has heard multiple

28 rounds of briefing, remanding to the state court "at this stage of the litigation would not

1  serve the principles of 'judicial economy, convenience, fairness, and comity.'" *Tamburri*,

2  875 F. Supp. 2d at 1016 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350

3  (1988)). Accordingly, the Court exercises its supplemental jurisdiction over the remaining

4  state law claims.

5       **2.**    **Personal Jurisdiction**

6       To enter default judgment, the Court must also have a basis for the exercise of

7  personal jurisdiction over the defendants-in-default. *Tuli*, 172 F.3d at 712; *see also King v.*

8  *Russell*, 963 F.2d 1301, 1306 (9th Cir. 1992). A defendant is subject to general jurisdiction

9  only where the defendant's contacts with a forum "are substantial or continuous and

10 systematic." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir.

11 2000) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415

12 (1984)). "For an individual, the paradigm forum for the exercise of general jurisdiction is

13 the individual's domicile." *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct.

14 2846, 2853 (2011). Further, a party waives lack of personal jurisdiction as a defense if the

15 defense is not raised at the first available opportunity, by motion or included in a responsive

16 pleading. Fed. R. Civ. P. 12(h)(1); *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227

17 F.3d 1104, 1106-07 (9th Cir. 2000).

18      Boyd resides in Oakland, California, and does business in Alameda County. Dkt. No.

19 65 at 2. Because Boyd lives and works in California and there is no indication he intends to

20 leave, he is subject to general jurisdiction within this state. As such, this Court has personal

21 jurisdiction over Boyd. Further, in Boyd's first available opportunity, his answer to the

22 Brantleys' original complaint, he raised fifteen affirmative defenses but did not include lack

23 of personal jurisdiction. Dkt. No. 65 at 9-12. Boyd has waived any defense to this Court's

24 exercise of personal jurisdiction.

25      **3.**    **Magistrate jurisdiction**

26      Boyd never consented to the jurisdiction of a magistrate judge, and therefore, this

27 Court lacks the authority to rule on a motion that could dispose of the case against him.

28 28 U.S.C. § 636(c); *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d

995, 999 (N.D. Cal. 2001) ("Federal Rule of Civil Procedure 55(b)(2) permits the Court, following a defendant's default, to enter a final judgment in a case.").  The Court therefore refers this case for reassignment to the district court.

**B.    Default Judgment**

The *Eitel* factors weigh in favor of default judgment.

**1.    Prejudice to plaintiffs**

The first factor the Court examines is the possibility of prejudice to a plaintiff if default judgment is not granted. *Eitel*, 782 F.2d at 1471.  If plaintiff would be without a remedy if default judgment is denied, this factor weighs in favor of granting default judgment. *See, e.g.*, *IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (finding that plaintiffs in copyright infringement action would be prejudiced because they would be without recourse to stop defendant's infringement or to recover for the harm and damages suffered).  Here, the Brantleys have tried to resolve this issue with Boyd in court for over five years.  If default judgment is not granted, they would have no other recourse to recover for the harm Boyd has caused them.  As such, the Brantleys will suffer prejudice if default judgment is not granted.  This Court finds that this factor favors granting default judgment.

**2.    Merits of the claim and the sufficiency of the complaint**

The second and third *Eitel* factors focus on the merits of plaintiff's substantive claims and the sufficiency of plaintiff's complaint. *Eitel*, 782 F.2d at 1471-72.  "Together, these factors require that plaintiff assert claims upon which it may recover." *IO Group*, 708 F. Supp. 2d at 989 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003)).  In this procedural posture, a court must take "the well-pleaded factual allegations" in the complaint "as true"; however, the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).  Plaintiffs' "obligation to provide the grounds of [their] entitle[ment] to relief requires more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (internal citation and quotations marks omitted).  "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of No. America*, 980 F.2d 1261, 1267 (9th Cir. 1992).  The Brantleys allege two claims against Boyd: (1) conversion, and (2) intentional infliction of emotional distress.  FAC ¶¶ 54-61, 71.

### a.    Conversion

To prove conversion under California law, three elements must be met: (1) ownership or right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages.  *Tyrone Pac. Int'l, Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981) (citing *Hartford Fin. Corp. v. Burns*, 158 Cal. Rptr. 169, 172 (Cal. Ct. App. 1979)).

First, the Brantleys allege that under the terms of the escrow agreement, they were to be the sole recipients of the $180,000, which, taken as true, demonstrates that they alone possess the right to the money.  FAC ¶¶ 18, 20; Dkt. No. 311 at 6 (asserting that the Brantleys were the sole beneficiaries of the loan).  Second, the Brantleys allege that Boyd wrongfully converted the funds, despite very specific terms of escrow that Academy would only release the funds to the Brantleys, unless written permission from the Brantleys was given.  FAC ¶ 18.  Yet, Boyd requested and received the $180,000 in his personal bank account, without the Brantleys' permission.  FAC ¶ 23.  Boyd had no rightful claim to the $180,000 and wrongly took the property of another.  Third, the Brantleys allege that as a result of Boyd's conversion, they had to fight foreclosure proceedings, were unable to pay back the $180,000 borrowed against their home, lost opportunities to refinance their home, lost equity in their property, and suffered irreparable damage to their credit.  FAC ¶¶ 27, 28, 61; E. Brantley Decl. ¶ 13; L. Brantley Decl. ¶ 14.  The Brantleys have pleaded sufficient facts to state a claim for conversion.

### b.    Intentional infliction of emotional distress

In order to establish a claim for intentional infliction of emotional distress under California law, a plaintiff must show: (1) that the defendant's conduct was outrageous; (2) that the defendant intended to cause or recklessly disregarded the probability of causing

1  emotional distress; and (3) that the plaintiff's severe emotional suffering was; (4) actually

2  and proximately caused by defendant's conduct. *Austin v. Terhune*, 367 F.3d 1167, 1172

3  (9th Cir. 2004).

4     Outrageous conduct "must be so extreme as to exceed all bounds of that usually

5  tolerated in a civilized community." *McMahon v. Craig*, 97 Cal. Rptr. 3d 555, 565 (Cal. Ct.

6  App. 2009).  If the average member of the community would resent defendant for his

7  conduct and exclaim "Outrageous!", it is considered outrageous. *Id*.  For example, in

8  *Sanchez-Corea v. Bank of Am.*, the defendant failed to advise plaintiffs that the bank would

9  give no further loans, misrepresented that additional loans would be made if plaintiffs

10 assigned all accounts to the bank, refused to give any loans to plaintiffs after they did so,

11 forced plaintiffs to execute excessive guarantees and security agreements, and publicly

12 ridiculed plaintiffs.  701 P.2d 826, 837-38 (Cal. 1985).  The court affirmed the jury's

13 finding that this conduct was sufficiently outrageous to succeed in a claim for intentional

14 infliction of emotional distress. *Id.* at 838.

15    Here, Boyd's conduct was outrageous.  Like the defendant in *Sanchez-Corea*, Boyd

16 failed to advise the Brantleys, FAC ¶ 12, deceived and misrepresented facts to them, FAC

17 ¶¶ 10, 20, and ultimately, caused them public humiliation, FAC ¶¶ 28, L. Brantley Decl. ¶

18 8, E. Brantley Decl. ¶ 8.  Boyd's conduct "exceed[ed] all bounds of that usually tolerated in

19 a civilized community" and would have caused an average member of the community to

20 resent him and deem his conduct outrageous. *McMahon*, 97 Cal. Rptr. 3d at 565.

21    Further, Boyd recklessly caused the Brantleys' emotional distress.  The Brantleys

22 allege that Boyd intentionally deceived them into applying for the loan with his superior

23 real estate knowledge.  FAC ¶¶ 10, 20.  In fact, Boyd testified at his deposition that he

24 intended to take the Brantleys' $180,000, and that he knew they had used their house as

25 collateral.  Excerpts of Boyd's Deposition Transcripts, Dkt. No. 311-4 at 8, 11-12, 15.  Yet,

26 despite not requiring the Brantleys' money to secure financing, he opened an escrow

27 account, took the $180,000, and used the money to maintain his other property investments

28 and make car payments.  FAC ¶ 12; Dkt. No. 311-4 at 8-9, 16.  By disregarding that the

Brantleys' would be unable to pay off the loan and consequently would lose their home, Boyd recklessly directed emotional injury at the Brantleys.

As a result, Boyd's actions caused the Brantleys' financial problems, including foreclosure on their home, their ruined credit, and the harassing calls to their home.  FAC ¶¶ 26-28; E. Brantley Decl. ¶¶ 8, 13.  The Brantleys also allege these financial problems caused them injury sufficient to show they suffered emotional distress.  Injury may include "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea."  *Young v. Bank of Am.*, 190 Cal. Rptr. 122, 126 (Cal. Ct. App. 1983) (internal citations and quotation marks omitted).

In his declaration, Mr. Brantley stated that he was shocked, horrified, and physically ill to the point of hyperventilation when he found out about Boyd's deceit.  L. Brantley Decl. ¶ 7.  Since Boyd took the $180,000, Mr. Brantley has felt humiliated, embarrassed, and worried; he has had trouble sleeping and developed anxiety problems.  *Id.* ¶¶ 8, 16.  Further, Ms. Brantley, in her declaration, stated she was also shocked, angry, distraught, and confused when she found out that Boyd had taken the $180,000.  E. Brantley Decl. ¶ 7.  She states that she has suffered from severe migraine headaches, mini-strokes, and short term memory loss.  *Id.* ¶ 15.  Given these allegations, this Court finds that the Brantleys have sufficiently pleaded their claim for intentional infliction of emotional distress.  Accepting the Brantleys' well-pleaded allegations as true, this Court finds that the Brantleys' claim for intentional infliction of emotional distress has merit.

Because both the conversion and intentional infliction of emotional distress claims are sufficiently pleaded, and have merit, both the second and third *Eitel* factors weigh in favor of granting default judgment.

### 3.    Possibility of dispute concerning material facts

In analyzing a motion for default, a court must take "the well-pleaded factual allegations" in the complaint "as true."  *DIRECTV*, 503 F.3d at 854.  Although Boyd responded to the Brantleys' original complaint, "[an] amended complaint supersedes the

original, the latter being treated thereafter as nonexistent." *Lacey v. Maricopa Cnty.*, 649

F.3d 1118, 1137 (9th Cir. 2011) (internal citation and quotation omitted); *Employee*

*Painters' Trust v. Ethan Enters.*, 480 F.3d 993, 999-1000 (9th Cir. 2007) (default judgment

proper where defendant failed to answer amended complaint even after filing an answer to

original complaint and disputing counterclaim).  Therefore, the Court cannot consider

Boyd's answer to the Brantleys' original complaint as a response to the amended complaint.

Because all well-pleaded facts in the amended complaint are accepted as true and Boyd

never responded to the amended complaint, there is nothing to suggest a possible dispute of

material facts.  This factor weighs in favor of granting default judgment.

### 4.    Excusable negligence

Excusable neglect is an equitable concept and "takes account of factors such as

'prejudice, the length of the delay and impact on judicial proceedings, the reason for the

delay, including whether it was within the reasonable control of the movant, and whether

the movant acted in good faith.'" *TCI Group Life Ins. Plan v. Knoebber*, 224 F.3d 691, 696

(9th Cir. 2001) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. LP*, 507 U.S. 380, 395

(1993)).

Boyd was properly served with the summons and complaint and given notice of entry

of default.  Dkt. Nos. 150, 193.  Boyd was served with the Brantleys' first amended

complaint in October 2010.  Dkt. No. 150.  The clerk entered default against him in March

2011.  Dkt. No. 193.  It is now April 2013, and Boyd has failed to answer the complaint or

defend against the Brantleys' motion for default.  The proper notice and length of delay

weigh against a finding of excusable neglect, and in favor of granting default judgment.

### 5.    Policy considerations

There is a strong policy favoring decisions on the merits and weighs against entering

default judgment.  *Eitel*, 782 F.2d at 1472.  The existence of Federal Rule of Civil

Procedure 55(b), however, shows that this policy is not dispositive.  *Kloepping v. Fireman's*

*Fund*, Case No. 94-cv-2684 TEH, 1996 WL 75314, *3 (N.D. Cal. Feb. 13, 1996).  Further,

given Boyd's failure to respond to this action, a decision on the merits is impractical in this

case. *W. Conference of Teamsters Pension Plan v. Jennings*, Case No. 10-cv-3629 EDL, 2011 WL 2609858, *4 (N.D. Cal. June 6, 2011) (finding a decision on the merits impractical due to defendant's failure to respond).  Although the policy favoring decision of this case on its merits weighs against granting default judgment, Boyd's failure to respond has made a decision on the merits impossible.  Thus, this factor does not weigh either way.

### 6. Money at stake and amount of damages

Under this factor, "the Court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal 2010).  "If the sum of money at issue is reasonably proportionate to the harm cause by the defendant's actions, then default judgment is warranted." *Walters v. Statewide Concrete Barrier, Inc.*, Case No. 04-cv-2559 JSW (MEJ), 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006).

Here, the Brantleys request: (1) conversion damages in the amount of $69,300, the exact amount of interest on the $180,000 Boyd deprived them; (2) damages for intentional infliction of emotional distress in the amount of $75,000; and (3) punitive damages in the amount of $18,000, or 10% of $180,000.  Dkt. No. 311 at 11-16.

### a. Conversion damages

Damages for the wrongful conversion of personal property are calculated as the "value of the property at the time of the conversion, with interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of" and "by a fair compensation for the time and money properly expended in pursuit of the property." Cal. Civ. Code § 3336.  The interest for the value of lost property is calculated at 7 percent per year. *See* Cal. Const. art. XV, § 1.

Here, the Brantleys seek $69,300 in damages, which is the amount of interest on $180,000, calculated over the five and a half years Boyd has deprived them of the money.  The statute specifically allows for the recovery of interest.  The Court finds that the amount of conversion damages is reasonably proportional.

### b.     Damages for intentional infliction of emotional distress

A judgment by default shall not award damages that are different or exceed the amount requested by plaintiffs.[1]  Fed. R. Civ. P. 54(c), 55(d).  Generally, a default judgment must be supported by specific allegations as to the exact amount of damages in order to provide defendants notice for the amount sought.  *See Hupp v. Jones*, 474 F. App'x 601, 602 (9th Cir. 2012).  But in a claim for intentional infliction for emotional distress, "compensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances."  *Johnson v. Hale*, 940 F.2d 1192, 1193 (9th Cir. 1991).  "[N]o evidence of economic loss or medical evidence of mental or physical symptoms stemming from the humiliation need be submitted."  *Id.*  Thus, damages for emotional distress, unlike damages in a claim that might contain concrete calculations, such as breach of contract, are not as easily ascertained at the default judgment stage.

A district court may hold a hearing if it determines it is necessary to determine or investigate the amount of damages.  Fed. R. Civ. P. 55(b)(2).  But, a hearing on the issues of damages is not required as long as the Court finds there is a basis for the damages specified.  *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (no hearing necessary when documentary evidence show judgment based on definite figures).  A court has the discretion to determine that affidavits or other documentary evidence are sufficient to evaluate the fairness of the amount requested.  *Tamarin v. Adam Caterers, Inc*, 13 F.3d 51, 54 (2d Cir. 1993).

There is little case law in the Ninth Circuit regarding how to evaluate whether the amount of damages claimed for emotional distress is reasonably proportional to the harm at

---

[1] Although Rule 54(c) states that a default judgment may not exceed the amount demanded in the pleadings, a plaintiff need not specify an exact amount in his complaint in order to prevail in a motion for default judgment.  *Henry v. Sneiders*, 490 F.2d 315, 317, 317 n.2 (9th Cir. 1974) (affirming $235,338.89 default judgment where complaint sought $71,243.68 in conversion damages and additional damages "the full amounts of which Plaintiff will prove at trial").  The Brantleys asked for "statutory damages," "non-economic and economic damages," and "punitive damages according to proof" in their first amended complaint and subsequently specified the amount of damages sought from Boyd in their motion for default judgment.  FAC ¶ 71; Dkt. No. 311 at 15.

the default judgment stage.  District courts to have considered the issue, particularly those in the Eastern District of California, have adopted the approach used by courts in the Second Circuit and compare the damages sought in default judgment to jury awards in similar cases.  *See, e.g.*, *Hernandez v. Madrigal*, Case No. 09-cv-0413 MCE (GGH), 2011 WL 6936364 (E.D. Cal. Dec. 30, 2011); *Esco Marine Inc. v. SS PACIFIC STAR*, Case No. 11-cv-1353 KJM (GGH), 2011 WL 4852272 (E.D. Cal. Oct. 11, 2011); *F.T.C. v. Hope for Car Owners*, Case No. 12-cv-0778 GEB (EFB), 2013 WL 322895 (E.D. Cal. Jan. 24, 2013); *Molina v. Creditors Specialty Serv., Inc.*, 08-cv-2975 GEB (GGH), 2010 WL 235042 (E.D. Cal. Jan. 21, 2010); *Lowe v. Elite Recovery Solutions L.P.*, Case No. 07-cv-0627 RRB (GGH), 2008 WL 324777 (E.D. Cal. Feb. 5, 2008); *see also Powell v. Blackrock Asset Mgmt., LLC*, Case No. 11-cv-0517 RNBx, 2011 WL 4551450, *4 (C.D. Cal. Sept. 30, 2011) (adopting a similar approach in which plaintiffs' declarations was sufficient to ascertain claimed damages).

For example, in *Hernandez*, the plaintiff was deceived into taking a fraudulent loan. 2011 WL 6936364 at *3.  The plaintiff also experienced harassing phone calls and faced dire financial straits. *Id.*  The plaintiff suffered emotional distress, including sleepless nights, stress, and anxiety, which resulted in severe stomach pain, lasting for over four years. *Id.*  To compensate for this injury, the plaintiff sought $75,000 in damages for emotional distress. *Id.* at *2.  The *Hernandez* court, after exploring the range of damages awarded in similar, "garden variety" emotional distress cases decided on the merits in the New York district courts, found that the awards ranged from $5,000 to $125,000, and decided that $75,000 was a reasonable amount. *Id.* at *4.

Similarly, in *Morisaki v. Davenport, Allen & Malone, Inc.*, after considering California district court cases, the court found a range of $25,000 to $100,000 for intentional infliction of emotional distress claims resulting from abusive debt collection or Fair Debt Collection Practices Act violations.  Case No. 09-cv-0298 MCE (DAD), 2010 WL 3341566, *5 (E.D. Cal. Aug. 23, 2010).  In its analysis, the court examined cases where the plaintiff suffered emotional distress without medical proof, such as embarrassment, fear,

1  anger, panic, humiliation, nervousness, and difficulty sleeping, as well as cases with long

2  histories. *Id.* This Court finds this particular approach persuasive because of the

3  similarities in the tortious conduct and the resulting emotional distress, as well as the

4  difficulty in ascertaining damages resulting from emotional distress, in part, due to its

5  subjective nature and the uniqueness of each claim. After all, to require plaintiffs to

6  mechanically attribute each dollar they are claiming to an ailment or malady is impractical.

7       The Brantleys have submitted two detailed declarations attesting to their emotional

8  distress. They allege to have suffered emotional indignities and stress-induced medical

9  problems for the past five and a half years. E. Brantley Decl. ¶¶ 7-15; L. Brantley Decl.

10  ¶¶ 7-16. Specifically, Mr. Brantley alleges that he was shocked, horrified, angry, confused,

11  distraught, and physically ill when he found out what Boyd did. L. Brantley Decl. ¶ 7. He

12  alleges that as a result of Boyd's actions, he had to face the ordeal of the foreclosure of his

13  home, which included a notice of foreclosure in the newspaper, receiving harassing calls

14  regarding the foreclosure and the financial trouble he faced, and numerous strangers

15  approaching his home with questions regarding the foreclosure. *Id.* ¶¶ 8, 10. He alleges

16  that this experience causes him anxiety and embarrassment to the present day. *Id.* ¶ 10.

17  He alleges that Boyd's conversion ruined his credit, and it was difficult to pay for living

18  expenses. *Id.* ¶¶ 12, 14. He had to cut back on prescription medication and doctor's visits,

19  faced numerous instances where he could barely pay his energy bill and had to rely on his

20  children and grandchildren for help. *Id.* ¶ 14. As result, he alleges that he and his wife are

21  less trusting of and less willing to help people, have lost trust of the people around them,

22  and have isolated themselves from their friends and community. *Id.* ¶ 15. Further, he

23  alleges that he continues to have trouble sleeping, have anxiety problems, and is constantly

24  worried. *Id.* ¶ 16.

25       Similarly, Ms. Brantley felt the same gambit of emotions when she found out that

26  Boyd took the $180,000. E. Brantley Decl. ¶ 7. She was humiliated, embarrassed,

27  exhausted, and emotionally drained by the foreclosure proceedings. *Id.* ¶ 9. As a result of

28  the foreclosure, her financial struggles, her inability to afford care, and her reliance on her

1  children and grandchildren, she suffers from emotional and mental distress, including

2  severe migraine headaches, short term memory loss, and mini-strokes. *Id.* ¶¶ 13-15. She

3  states that she was hospitalized for a stroke in 2009 as a result of this ordeal. *Id.* ¶ 15.

4  Through their declarations, the Brantleys have sufficiently demonstrated a basis for

5  emotional distress damages. The Brantleys allege the emotional distress they suffered as a

6  result of Boyd's actions amount to $75,000 in damages. Given the similarities between the

7  Brantleys and the plaintiff in *Hernandez*, and the duration for which Brantleys have

8  experienced emotional distress, this Court finds that $75,000 is a reasonable award. This

9  amount is well within the range of awards found by multiple courts examining similar

10  tortious conduct and garden variety emotional distress.

11               **c.   Punitive damages**

12  Causes of action for conversion support an award of punitive damages, when conduct

13  is intentional or fraudulent. Cal. Civ. Code § 3294(a), (c); *see also Cole v. Desert Media*

14  *Grp., Inc.*, Case No. 93-cv-3740 VRW, 1994 WL 184622, *2 (N.D. Cal. Apr. 25, 1994).

15  In order to determine whether punitive damages should be awarded, the Court

16  considers: (1) the nature of defendant's acts; (2) the amount of compensatory damages

17  awarded; and (3) the wealth of the defendant. *Prof'l Seminar Consultants, Inc. v. Sino Am.*

18  *Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1473 (9th Cir. 1984). In determining whether

19  punitive damages are appropriate, the Court "cannot make a fully informed determination of

20  whether an award of punitive damages is excessive unless the record contains evidence of a

21  defendant's financial condition." *Shanghai Automation*, 194 F. Supp. 2d at 1011 (finding

22  that the record did not sufficiently establish defendant's wealth, and declining to award

23  punitive damages without knowing the proportionality of an award) (internal citations and

24  quotations omitted).

25  Here, plaintiffs have not alleged or presented any measurable evidence regarding

26  defendant's wealth. The Brantleys state that Boyd resides with friends and relatives, and

27  earns commission as a real estate agent, but currently has no clients. Dkt. No. 311-4 at 5, 6.

28  These facts do not adequately establish defendant's net worth or wealth. As such, this

1  Court does not have a sufficient basis to determine the appropriateness of punitive damages,

2  and, if anything, the record indicates that an award of punitive damages could be excessive

3  given Boyd's financial situation.  Therefore, the Court declines to award punitive damages.

### IV. CONCLUSION

5      On balance, the *Eitel* factors favor entering default judgment against Boyd.

6  Accordingly, the Court REFERS this case for REASSIGNMENT to a district court judge

7  and RECOMMENDS that plaintiffs' motion for default judgment against Boyd be

8  GRANTED for a total award amount of $144,300 to be broken down as follows:

9      1.      conversion damages in the amount of $69,300;

10     2.      intentional infliction of emotional distress damages in the amount of $75,000.

11     Any party may object to this recommendation within 14 days of this order.  Fed. R.

12  Civ. P. 72(b).

13     IT IS SO ORDERED.

14     Date: April 30, 2013                    _____

15                                              Nathanael M. Cousins
                                                United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28