UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LARRY TYRONE BRANTLEY, SR., and ELLEN BRANTLEY,<br><br>Plaintiffs,<br><br>v.<br><br>GARRETT BOYD, SERGEI KLYAZMIN, MODO REALTY, INC., ROYAL CROWN MORTGAGE, INC., PRAVEEN CHANDRA, ACADEMY ESCROW, and SCHWARTZ & FENSTER, P.C.,<br><br>Defendants. | Case No. 07-cv-06139 NC<br><br>**REFERRAL FOR REASSIGNMENT WITH RECOMMENDATION TO DENY MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 318 |

This case arises out of defendants' alleged scheme to lure plaintiffs Larry and Ellen Brantley into borrowing $180,000 against their home and investing it in a sham real estate deal. Plaintiffs have since settled with all but one defendant. Defendants and cross-claimants Sergei Klyazmin, Modo Realty, Inc., and Royal Crown Mortgage, Inc. now move for default judgment under Federal Rule of Civil Procedure 55(b) against defendant and cross-defendant Garret Boyd. Boyd has not consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), however, and so the Court REFERS this matter for REASSIGNMENT to a district court judge. The Court RECOMMENDS that the district court DENY WITHOUT PREJUDICE cross-claimants' motion for default judgment.

# I. BACKGROUND

## A. The Parties

Defendant and cross-claimant Sergei Klyazmin is the president, sole owner, designated officer, and employing broker of defendants and cross-claimants, Modo Realty, Inc. and Royal Crown Mortgage, Inc., both of which do business in Alameda County, California. Brantleys' First Am. Compl. ¶¶ 3-4, Dkt. No. 125; Klyazmin's, Modo Realty's and Royal Crown's Answer to Brantleys' First Am. Compl. ¶¶ 2-3, Dkt. No. 157. Plaintiffs in the underlying action, Larry Tyrone Brantley and Ellen Brantley, are husband and wife and owners of the property at 3120 San Andreas Drive, Union City, California. Dkt. No. 125 ¶ 1. Defendant and cross-defendant Garrett Boyd, a licensed real estate agent, resides in Oakland, California and does business in Alameda County, California. *Id.* ¶ 2. Defendant and cross-defendant Academy Escrow is an independent escrow company doing business in Alameda County, California. Dkt. No. 125 ¶ 5; Academy's Answer to Brantleys' First Am. Compl., Dkt. No. 156 at 2. Defendant Praveen Chandra is a private lender doing business in Alameda County, California. Dkt. No. 125 ¶ 6. Defendant Schwartz & Fenster is a professional law corporation, debt collector, foreclosure trustee, and agent retained by Chandra to give legal advice and counsel, collect debts, and institute foreclosure proceedings. *Id.* ¶ 7; Schwartz & Fenster's Answer to First Am. Compl., Dkt. No. 6 at 2. Schwartz & Fenster does business in Alameda County, California. Dkt. No. 125 ¶ 7.

## B. The Facts Alleged in the Underlying Dispute[1]

In February 2007, the Brantleys met defendant Garrett Boyd through Monique Douthit, the mother of Ms. Brantley's grandniece and grandnephew. Dkt. No. 125 ¶ 9. Boyd convinced the Brantleys to refinance their home for $180,000 and to hold the money in escrow for about sixty days, so that he could secure financing to purchase a $2.1 million property for himself. *Id.* ¶ 10. Boyd claimed that the Brantleys' money would sit in

---

[1] These facts are alleged in the Brantleys' first amended complaint, Dkt. No. 125, in which cross-claimants were named as defendants.

Case No. 07-cv-06139 NC
REF. FOR REASSIGNMENT WITH
RECOMMENDATION
2

escrow without being touched, would be repaid to the lender at the end of the escrow period, and would be used only to secure financing. *Id.* In exchange for placing the money in escrow and borrowing against their house, Boyd claimed that he would pay the Brantleys $25,000 and Douthit a finder's fee of $4,000. *Id.*

Boyd contacted Klyazmin for assistance in locating both the financing for the $2,000,000 property acquisition and also a lender willing to earn $30,000 for a short term $180,000 loan. Cross-claimant's Mot. Default Judg., Dkt. No. 318 at 2. Boyd told Klyazmin that he had a "relative" willing to secure the $180,000 loan with her home equity. *Id.* On April 10, 2007, Boyd realized he would be unable to secure financing, and no longer needed to "show money on paper." Dkt. No. 125 ¶ 12. Despite knowledge of this, Boyd did not disclose this information to the Brantleys. *Id.* Rather, Boyd, along with Klyazmin, Modo, and Royal Crown, opened an escrow account with Academy. *Id.* ¶ 13.

On April 24, 2007, Chandra agreed to loan the Brantleys $180,000 against their home. Dkt. No. 125 ¶ 15. On the same day, Academy prepared the escrow instructions, which provided that the $180,000 would only be disbursed to the Brantleys at the end of the escrow period, and that any change of instructions must be made in writing. *Id.* ¶ 18. On May 4, 2007, Chandra sent $180,000 to Academy's escrow account. *Id.* ¶ 23. Academy immediately wired the funds in escrow directly to Boyd's bank account. *Id.*

When the loan came due on June 28, 2007, Chandra demanded that the Brantleys repay. *Id.* ¶ 25. Chandra instituted non-judicial foreclosure proceedings against the Brantleys in Alameda County Superior Court sometime after August 14, 2007. *Id.* ¶ 26.

**C.   Procedural History**

On November 9, 2007, the Brantleys filed an action against all defendants in the Superior Court of California, County of Alameda. Dkt. No. 1 at 2. Chandra removed the action to federal court on December 6, 2007 because the Brantleys claimed violations of federal laws over which federal courts would have original jurisdiction. Dkt. No. 1. On January 7, 2009, Boyd filed an answer to the Brantleys' original complaint. Dkt. No. 65.

//

1   On the same day, Boyd's attorney also filed a motion to withdraw, which Judge Conti
2   granted on February 17, 2009.  Dk. No. 68; Dkt. No. 77.
3       On October 7, 2009, Judge Conti granted the Brantleys' motion to amend their
4   complaint.  Dkt. No. 122 at 2.  The Brantleys filed their first amended complaint on
5   September 13, 2009.  Dkt. No. 125.  Boyd never filed an answer.
6       On April 22, 2011, Klyazmin, Modo Realty, and Royal Crown Mortgage ("cross-
7   claimants") filed a crossclaim against Academy Escrow and Boyd for indemnification,
8   equitable contribution, apportionment of fault, and "tort of another" to recover attorneys'
9   fees.  Klyazmin's, Modo Realty's, and Royal Crown's Cross-claim, Dkt. No. 204.  Cross-
10  claimants allege that Academy's and Boyd's "active negligence, breach of contract, or
11  other wrongful conduct was the proximate and actual cause of plaintiffs' damages." *Id.* ¶
12  10.  Cross-claimants "deny that they were or are in anyway responsible for the damages"
13  the Brantleys allege they sustained and seek "complete, total, or partial indemnity" for any
14  amount that the Brantelys recover from cross-claimants. *Id.* ¶¶ 10-11.  Cross-claimants
15  also allege that under the "tort of another" theory, they are entitled to attorneys' fees
16  incurred in bringing their crossclaim and in defending against the underlying complaint.
17  *Id.* ¶ 18-19.  Academy responded to the crossclaim, but Boyd did not.
18      On July 8, 2011, the clerk entered the default of Boyd on the crossclaim.  Dkt. No.
19  232.  The active remaining parties, the Brantleys, cross-claimants, and Academy entered
20  into a settlement on September 27, 2012, and the Court granted the stipulation to voluntary
21  dismissal of the plaintiffs' claims against Academy Escrow and cross-claimants on January
22  7, 2013.  Dkt. No. 308.  Cross-claimants requested and the clerk entered default against
23  Boyd in July 2011.  Dkt. Nos. 230, 232.  Cross-claimants now move for default judgment
24  against Boyd.  Dkt. No. 318.  No opposition to the motion for default judgment has been
25  filed by Boyd.
26      Judge Conti reassigned the case to this Court on May 29, 2012.  Dkt. No. 277.
27  //
28

Case No. 07-cv-06139 NC
REF. FOR REASSIGNMENT WITH
RECOMMENDATION                            4

## II. STANDARD OF REVIEW

Default may be entered against a party who fails to plead or otherwise defend an action and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a). After entry of default, the Court has discretion to grant default judgment on the merits of the case. Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to grant default judgment, the Court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also Massa v. Jiffy Products Co.*, 240 F.2d 702, 705 (9th Cir. 1957) (On a motion for default judgment, "the allegations of the cross-complaint are taken as true.").

## III. DISCUSSION

**A.    Jurisdiction**

In considering whether to enter a default judgment, a district court first must determine whether it has jurisdiction over the parties and the subject matter. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

**1.    Subject matter jurisdiction**

Federal courts shall have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that the federal courts have subject matter jurisdiction where "[t]he state and federal claims . . . derive from a common nucleus of operative fact"). It is within the

Court's discretion to exercise supplemental jurisdiction over state law claims if all federal claims are settled and dismissed. *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991). The Court's discretion "is dependent upon what will best accommodate the values of economy, convenience, fairness, and comity." *Id.* (internal citation and quotation marks omitted); *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1016 (N.D. Cal. 2012) (exercising supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(c)(3) despite dismissal of plaintiff's sole federal cause of action because it best served judicial economy, convenience, fairness, and comity).

Here, the Brantleys alleged violations of 15 U.S.C. § 1601, the Truth In Lending Act, 15 U.S.C. § 1639, the Home Ownership and Equity Protection Act, and 12 U.S.C. § 2601, the Real Estate Settlement Procedure Act, against Chandra, Academy, Klyazmin, Modo Realty, and Royal Crown. FAC ¶¶ 29-38. Further, the Brantleys alleged violations of 15 U.S.C. § 1692, the Fair Debt Collection Practices Act, against Schwartz & Fenster. *Id.* ¶¶ 39-42. The Court has subject matter jurisdiction to adjudicate these claims because they arise out of federal law. Because cross-claimants' state law indemnity claims against Boyd arise out of the same "nucleus of operative fact," namely the alleged defrauding of the Brantleys orchestrated by Boyd, the Court is within its discretion to exercise supplemental jurisdiction under § 1367(a) over cross-claimants' claims. *Danner v. Himmelfarb*, 858 F.2d 515, 521 (9th Cir. 1988) (holding that federal court could exercise supplemental jurisdiction over crossclaims arising out of the same core of operative facts).

Although the original plaintiffs have settled with all other defendants, in light of the fact that this action has been pending for over five years and this Court has heard multiple rounds of briefing, remanding to the state court "at this stage of the litigation would not serve the principles of 'judicial economy, convenience, fairness, and comity.'" *Tamburri*, 875 F. Supp. 2d at 1016 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Accordingly, the Court exercises its supplemental jurisdiction over the remaining state law claims.

//

Case No. 07-cv-06139 NC
REF. FOR REASSIGNMENT WITH RECOMMENDATION
6

### 2. Personal jurisdiction

To enter default judgment, the Court must also have a basis for the exercise of personal jurisdiction over the defendants-in-default. *Tuli*, 172 F.3d at 712; *see also King v. Russell*, 963 F.2d 1301, 1306 (9th Cir. 1992). A defendant is subject to general jurisdiction only where the defendant's contacts with a forum "are substantial or continuous and systematic." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011). A party waives lack of personal jurisdiction as a defense if the defense is not raised at the first available opportunity, by motion or included in a responsive pleading. Fed. R. Civ. P. 12(h)(1); *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106-07 (9th Cir. 2000).

Boyd resides in Oakland, California, and does business in Alameda County. Dkt. No. 65 at 2. Because Boyd lives and works in California and there is no indication he intends to leave, he is subject to general jurisdiction within this state. As such, this Court has personal jurisdiction over Boyd. Further, in Boyd's first available opportunity, his answer to the Brantleys' original complaint, he raised fifteen affirmative defenses but did not include lack of personal jurisdiction. Dkt. No. 65 at 9-12. Boyd has waived any defense to this Court's exercise of personal jurisdiction.

### 3. Magistrate jurisdiction

Boyd never consented to the jurisdiction of a magistrate judge, and therefore, this Court lacks the authority to rule on a motion that could dispose of the case against him. 28 U.S.C. § 636(c); *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001) ("Federal Rule of Civil Procedure 55(b)(2) permits the Court, following a defendant's default, to enter a final judgment in a case."). Accordingly, the Court refers this case for reassignment to the district court.

//

**B.   Default Judgment**

The *Eitel* factors weigh against a finding of default judgment.

### 1. Prejudice to cross-claimants

The first factor the Court considers is the possibility of prejudice to a plaintiff if default judgment is not granted. *Eitel*, 782 F.2d at 1471. If plaintiff would be without a remedy if default judgment is denied, this factor weighs in favor of granting default judgment. *See, e.g.*, *IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (finding that plaintiffs in copyright infringement action would be prejudiced because they would be without recourse to stop defendant's infringement or to recover for the harm and damages suffered). Here, cross-claimants have spent more than five years and over $80,000 in attorneys' fees to defend themselves in an action which they allege was caused solely by Boyd. Dkt. No 318 at 8. If default judgment is not entered, they would have no other remedy to recover this money. Thus, the first factor weighs in favor of granting default judgment.

### 2. The merits and sufficiency of the claim, and the possibility of a dispute of material fact

The second and third *Eitel* factors focus on the merits of cross-claimants' substantive claims and the sufficiency of their complaint. *Eitel*, 782 F.2d at 1471-72. "Together, these factors require that plaintiff assert claims upon which it may recover." *IO Group*, 708 F. Supp. 2d at 989 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003)). In this procedural posture, a court must take "the well-pleaded factual allegations" in the complaint "as true"; however, the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Cross-claimants' "obligation to provide the grounds of [their] entitle[ment] to relief requires more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations marks omitted). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient,

are not established by default." *Cripps v. Life Ins. Co. of No. America*, 980 F.2d 1261, 1267 (9th Cir. 1992). The Court also considers whether the complaint as pleaded presents the possibility of a dispute concerning material facts under the fourth *Eitel* factor. *Eitel*, 782 F.2d at 1471-72.

Cross-claimants allege two claims against Boyd: (1) indemnification, and (2) tort of another.[2] Cross-claimants "deny that they were or are in anyway responsible for the events, happenings, or damages" the Brantleys suffered and allege that any "such damages were caused entirely or partly" by Boyd. Dkt. No. 204 ¶ 10. Cross-claimants also assert that because Boyd's conduct was the "proximate and actual cause of the facts upon which [the Brantleys'] causes of action are based" that cross-claimants are "entitled to complete, total or partial indemnity." *Id.* ¶ 11. In addition, cross-claimants "claim entitlement to attorney's fees under the 'tort of another' theory of recovery." *Id.* ¶ 19.

### a. Indemnification

"In general, indemnity refers to 'the obligation resting on one party to make good a loss or damage another party has incurred.'" *Prince v. Pac. Gas & Elec. Co.*, 202 P.3d 1115, 1119 (Cal. 2009) (quoting *Rossmoor Sanitation, Inc. v. Pylon, Inc.* 532 P.2d 97 (1975)). "[T]here are only two basic types of indemnity: express indemnity and equitable indemnity." *Prince*, 202 P.3d at 1119. Express indemnity relies on an express contractual obligation, while equitable indemnity does not require a contractual relationship. *Id.* at 1120. "Although traditional equitable indemnity once operated to shift the entire loss upon the one bound to indemnify, the doctrine is now subject to allocation of fault principles and comparative equitable apportionment of loss." *Id*. Because cross-claimants do not allege that there was an express contractual relationship with Boyd, the Court looks to equitable indemnity as the cause of action.

//

---

[2] Cross-claimants' claims for equitable contribution and apportionment of fault are pleaded as alternatives to indemnification in the event that cross-claimants were found liable and so are not at issue. Dkt. No. 204 ¶¶ 14, 16.

Awards of equitable indemnity are contingent upon a finding that the proposed indemnitor is liable. *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 14 Cal. Rptr. 3d 721, 723 (Cal. Ct. App. 2004) ("One factor is necessary, however. With limited exception, there must be some basis for tort liability against the proposed indemnitor."); *accord Children's Hosp. v. Sedgwick*, 53 Cal. Rptr. 2d 725, 729 (Cal. Ct. App. 1996) (noting that indemnity requires finding a defendant liable as the "often expressed in the shorthand phrase 'there can be no indemnity without liability.'"); *Prince*, 202 P.3d at 1121 (finding that defendant could not claim equitable contribution from co-defendant, who was immune from liability for plaintiff's claims). "The principle of implied equitable indemnity is designed to prohibit one from profiting by his own wrong at the expense of one who is either free from fault or negligent to a lesser degree." *Hydro-Air Equip., Inc. v. Hyatt Corp.*, 852 F.2d 403, 406 (9th Cir. 1988).

The procedural posture is important to the merits of cross-claimants' claim for equitable contribution. Because Boyd did not respond to the complaint, the Brantleys moved for default judgment against Boyd. "Upon entry of a default judgment, facts alleged to establish liability are binding upon the defaulting party." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). So while Boyd may be liable to the Brantleys, cross-claimants' cross-complaint is devoid of any facts that would indicate that they are "free from fault or negligent to a lesser degree." *Hydro-Air*, 852 F.3d at 406.

Cross-claimants have stated only legal conclusions, for example, that "[Boyd's] active negligence, breach of contract, or other wrongful conduct was the proximate and actual cause of plaintiff's damages," or that if "plaintiffs did indeed sustain any damages as alleged in their First Amended Complaint, such damages were caused entirely or partly by [Boyd]." Dkt. No. 204 ¶ 10. Cross-claimants do not provide any facts that would indicate that Boyd alone is responsible for the alleged wrongs in the underlying complaint or that cross-claimants are less culpable than he. Such a showing is necessary for cross-claimants to succeed on the merits of their claim for equitable contribution. The insufficiency of the crossclaim is particularly glaring when compared with the Brantleys' complaint, in which

the Brantleys allege that cross-claimants had a relationship with the escrow company and pressed ahead with opening escrow despite knowing the entire deal was a sham. Dkt. No. 125 ¶¶ 12-14. Because cross-claimants state only threadbare, conclusory assertions, the possibility of a dispute over material facts—namely the extent of cross-claimants' liability as compared to Boyd's—is great. Accordingly, the insufficiency of the complaint, which undermines the merits of the equitable indemnification claim and raises the possibility of a dispute of fact, weighs against entering default judgment against Boyd for equitable indemnification.

### b. Tort of another

Under the theory of tort of another, a court may "award attorney's fees to the prevailing party in an action for implied indemnity if the court finds, among other things, that "the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person." *Unocal Corp. v. United States*, 222 F.3d 528, 543 (9th Cir. 2000); Cal. Civ. Proc. Code § 1021.6 ("Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity . . . ."). "California Code of Civil Procedure § 1021.6 [. . .] presupposes the existence of 'a claim for implied indemnity' on which the party seeking attorney's fees *has prevailed.*" *Watson v. Dep't of Transp.*, 80 Cal. Rptr. 2d 594, 597 (Cal. Ct. App. 1998) (emphasis added). In order to recover attorneys' fees under the "tort of another" theory, cross-claimants must first establish indemnity, which has not been satisfied. *Id*. Additionally, the "tort of another" doctrine "does not extend to allow recovery of legal expenses by a defendant who was defending against allegations of its own negligence." *Santa Clara Valley Water Dist. v. Olin Corp.*, 655 F. Supp. 2d 1048, 1063 (N.D. Cal. 2009).

As discussed above, cross-claimants' complaint is insufficient to establish a meritorious complaint for equitable indemnity against Boyd. Furthermore, cross-claimants were defending their own actions, independent of Boyd's liability, when they settled with the Brantleys. Thus, the claim for "tort of another" is not available to them.

Because the cross-complaint alleges insufficient facts to establish that cross-claimants are entitled to indemnity for Boyd's actions and attorneys' fees, the second, third, and fourth *Eitel* factors weigh against default judgment.

### 4. Excusable negligence

Excusable neglect is an equitable concept and "takes account of factors such as 'prejudice, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *TCI Group Life Ins. Plan v. Knoebber*, 224 F.3d 691, 696 (9th Cir. 2001) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. LP*, 507 U.S. 380, 395 (1993)). Boyd was properly served with the cross-complaint. Dkt. No. 204 at 8. The clerk entered default against him on July 8, 2011. Dkt. No. 193. It is now April 2013, and Boyd has failed to answer the complaint or defend against any claims in this action. This factor weighs in favor of granting default judgment.

### 5. Policy considerations

There is a strong policy favoring decisions on the merits and weighs against entering default judgment. *Eitel*, 782 F.2d at 1472. Particularly here, where cross-claimants settled with plaintiffs, policy weighs in favor of denying a default judgment. "In an indemnity action, the crucial question is whether the settling indemnitee acted unreasonably by paying too much, thereby acting as a volunteer." *Mel Clayton Ford v. Ford Motor Co.*, 127 Cal. Rptr. 2d 759, 769 (Cal. Ct. App. 2002). "A party cannot make a voluntary payment to settle an action and then hold another responsible for that payment through indemnity." *In re Cossu*, 410 F.3d 591, 595 (9th Cir. 2005); *accord S. Cal. Gas Co. v. Ventura Pipe Line Const. Co.,* 309 P.2d 849, 852 (Cal. Ct. App. 1957) (holding a voluntary payment made by the indemnitee, without regard to its liability, is not recoverable.).

As noted above, the critical question of whether, or the extent to which, cross-claimants are liable is not answered by the facts in the record. In addition, cross-claimants made an offer of $7,500 to plaintiffs under Federal Rule of Civil Procedure 68. *See* Dkt. No. 318-2 at 10. Ultimately, cross-claimants and the Brantleys settled for more than three

times that amount, suggesting that the settlement amount could include valuations of considerations other than liability. Dkt. No. 318-1 at 8. The cross-claimants have not fulfilled their burden in demonstrating the extent of their liability and its valuation, nor put forth any facts in their motion for default judgment and accompanying declarations that show that the settlement amount is reasonable. This factor therefore weighs against granting default judgment.

### 6. Money at stake

Under this factor, "the Court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal 2010). "If the sum of money at issue is reasonably proportionate to the harm cause by the defendant's actions, then default judgment is warranted." *Walters v. Statewide Concrete Barrier, Inc.*, Case No. 04-cv-02559 JSW (MEJ), 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006).

The cross-claimants request $118,707.28 in damages, comprised of (1) $25,016.50 paid in settlement, and (2) $81,952.75 in attorneys' fees. Dkt. No. 318-1 at 8; Dkt. No. 318-2 ¶ 7. As discussed above, cross-claimants have not shown that the settlement amount is reasonable. In analyzing a request for attorneys' fees, the Court considers the hourly rate charged and the time billed.

### a. Hourly rate

The Court may determine reasonable attorneys' fees by comparing the requested hourly rate with the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *see Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal citation and quotation marks omitted); *Rosenfeld v. U.S. Dep't of Justice*, Case No. 07-cv-03240 EMC, 2012 WL 4936047, *10-11 (N.D. Cal. Oct. 17, 2012) (finding attorneys' fee rates reasonable based on submission of attorneys' declarations, recent cases awarding them fees, and evidence of fees awarded by other California courts.).

Cross-claimants have not submitted any evidence that similar attorney work warrants an hourly rate of $140. Awards of attorneys' fees in this district vary widely. *Compare Nguyen v. Wells Fargo Bank, N.A.*, Case No. 10-cv-04081 EDL, 2011 WL 9322, *4 (N.D. Cal. Jan. 3, 2011) (approving $320 per hour attorneys' rate), *with Faigman v. AT & T Mobility LLC*, Case No. 06-cv-04622 MHP, 2011 WL 672648, *5 (N.D. Cal. Feb. 16, 2011) (finding attorneys' fees based on rates of $650 for partner services, $500 for associate attorney services and $150 for paralegal services reasonable). In the absence of any supporting data from cross-claimants, the Court cannot make a determination as to whether their proposed hourly rate is reasonable for this type of work.

### b. Reasonable time

To establish reasonable time, the party requesting fees must provide detailed time records documenting the tasks completed and the time spent. *See Welch*, 480 F.3d at 945-46. In support of their claim for attorneys' fees, the cross-claimants submit the declaration of Edward McCutchan. Dkt. No. 318, Ex. C. McCutchan's declaration, however, accounts for only $11,738.03 in costs. *Id.* The cross-claimants have not given the Court time records verifying the 554 hours of attorneys' fees which they claim. *Id.* at 2. In addition, the Court has already ordered cross-claimants to comply with the Civil Local Rules and provide "the relevant facts" necessary to adjudicate their motion for default judgment. *See* Dkt. No. 316. The motion the Court currently considers is cross-claimants' second motion for default judgment. *Compare* Dkt. No. 315 *with* Dkt. No. 318. Because the cross-claimants have failed to substantiate their damages request with proper documentation, the

//

Court cannot evaluate if this sum of money is warranted or reasonable. This factor therefore weighs against entering default judgment against Boyd.

## C.  Dismissal without prejudice

Unless there is a jurisdictional bar that cannot be cured, or defendants move concurrently to set aside default, courts frequently deny motions for default judgment without prejudice. Where the motion fails because of the insufficiency of the pleadings, as it does here, courts give the party leave to amend under Federal Rule of Civil Procedure 15. *Bd. of Tr. of San Mateo Hotel Emps. & Rest. Emps. Welfare Fund v. H. Young Enters., Inc.*, 08-cv-2619 EMC, 2009 WL 1033665 (N.D. Cal. Apr. 13, 2009) (denying default for insufficient factual allegations and giving plaintiffs 30 days to amend their complaint); *King v. Nat'l Credit Works, Inc.*, 10-cv-02413 AWI, 2011 WL 3847018 (E.D. Cal. Aug. 30, 2011) *report and recommendation adopted*, 10-cv-02413 AWI, 2011 WL 4635049 (E.D. Cal. Oct. 5, 2011) (finding the allegations insufficient to state a claim, but that the deficiencies were curable and giving leave to amend under Rule 15(b) so as not to prejudice plaintiff by denying motion for default judgment); *see also Alameda Cnty. Elec. Indus. Serv. Corp. v. Banister Elec., Inc.*, 11-cv-04126 LB, 2012 WL 3042696 (N.D. Cal. July 25, 2012) (giving plaintiffs 45 days to amend to perfect notice and document claim for damages).

The issue here is whether the deficiencies in the crossclaim are curable. Cross-claimants' claims fail because they are devoid of facts and state only legal conclusions. But, even if the claims were factually sufficient, the merits of the claims could remain questionable because success depends on a showing that Boyd was liable to the exclusion of cross-claimants. It is possible that cross-claimants can state additional facts to at least alleviate the possibility of disputed material fact and bolster the sufficiency of their claims. The *Eitel* factors may then weigh in their favor. Cross-claimants will be prejudiced by a denial with prejudice because they will have no way to seek relief from Boyd's alleged conduct, and he will escape additional liability just by failing to respond.

//

Although denial without prejudice will prolong this case, and may not cure cross-claimants' deficiencies, given the preference for denial without prejudice in relevant case law and the possibility of prejudice to cross-claimants, the Court RECOMMENDS that denial be without prejudice.

## IV. CONCLUSION

Considering the *Eitel* factors, the Court concludes that default judgment is not warranted in this case. Without a finding that cross-claimants are not liable, or are liable to a lesser degree, for the claims alleged against them in the underlying complaint, or a factually sufficient cross-complaint, the Court cannot conclude that shifting the entire cost of settlement and litigation onto Boyd is proper. Furthermore, cross-claimants have failed to sufficiently substantiate the damages they seek. In total, the second, third, fourth, sixth, and seventh *Eitel* factors weigh against entering default judgment for cross-claimants against Boyd. Without jurisdiction to rule on this dispositive motion, the Court REFERS this action for reassignment and RECOMMENDS that the district court DENY WITHOUT PREJUDICE cross-claimants' motion for default judgment.

Any party may object to this recommendation within 14 days of this order. Fed. R. Civ. P. 72(b).

IT IS SO ORDERED.

Date: April 30, 2013

_____
Nathanael M. Cousins
United States Magistrate Judge