**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY TYRONE BRANTLEY, SR., ELLEN BRANTLEY,<br><br>    Plaintiffs,<br><br>  v.<br><br>GARRETT BOYD, SERGEI KLYAZMIN, ROYAL CROWN MORTGAGE, et al.,<br><br>    Defendants.<br>AND RELATED CROSS-ACTION.<br>_____/ | No. C 07-6139 MMC<br><br>**ORDER DENYING CROSS-CLAIMANTS' APPLICATION FOR DEFAULT JUDGMENT** |

    Before the Court is cross-claimants Sergei Klyazmin ("Klyazmin"), MoDo Realty, Inc. ("MoDo"), and Royal Crown Mortgage, Inc.'s ("Royal Crown") (collectively, "cross-claimants") Application for Default Judgment by the Court against Cross-Defendant Garrett Boyd ("Boyd"), filed August 9, 2013, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. No opposition has been filed. Having read and considered the papers filed in support of the application, the Court rules as follows.[1]

## BACKGROUND

    The above-titled action arises from a scheme by defendant/cross-defendant Boyd to

---

[1] By order filed September 17, 2013, the Court vacated the hearing scheduled for September 20, 2013, and took the matter under submission.

convert funds belonging to plaintiffs Larry Tyrone Brantley, Sr. and Ellen Brantley (collectively, "the Brantleys"), which began with Boyd's convincing the Brantleys to take out a $180,000 loan, secured by their residence and to be placed in escrow on a short-term basis for the purpose of assisting Boyd in qualifying for a $2,000,000 loan he needed to purchase a piece of property (see plaintiffs' First Amended Complaint ("FAC") ¶¶ 10, 11; cross-claimants' First Amended Cross-Claim ("FACC") ¶ 8); at the conclusion of sixty days, the $180,000 was to be returned to the Brantleys, who, in addition, were to receive a $25,000 payment from Boyd for their assistance in the $2,000,000 transaction (see FAC ¶ 10; FACC ¶ 8). Cross-claimants acted as the broker for the Brantleys and connected them with defendant Praveen Chandra ("Chandra"), a private lender, who made the above-referenced home equity loan to them (see FAC ¶¶ 13, 15; FACC ¶ 9), the terms of which included a balloon payment of $180,000 plus $30,000 in interest (see FAC ¶ 15). Prior to the Brantleys' taking out that loan, however, and unbeknownst to them, the loan Boyd was endeavoring to obtain fell through. (See FAC ¶ 12.) Nevertheless, an escrow account was opened at defendant Academy Escrow, which subsequently, on oral misrepresentations by Boyd and in contravention of the express escrow instructions, released the $180,000 to Boyd, who then decamped with the funds. (See FAC ¶¶ 18, 23; FACC ¶¶ 8-9, 28.) Thereafter, Chandra demanded repayment and, when the Brantleys were unable to comply, instituted foreclosure proceedings on their home. (See FAC ¶ 26.)

The above-titled lawsuit followed, in which the Brantleys, in addition to their claims against Boyd for conversion, asserted both federal and state law claims against cross-claimants and other participants in the transactions, including violations of the Truth in Lending Act ("TILA"), 42, U.S.C. § 1601, and Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601-2617 (see FAC at 10-12), as well as negligence, breach of fiduciary duty and intentional infliction of emotional distress (see FAC at 13-15).

In support of their claims against cross-claimants, the Brantleys alleged said defendants, prior to the consummation of the $180,000 loan and opening of escrow, were aware that Boyd's loan had fallen through, and that they nonetheless, both negligently and

in breach of their fiduciary duty, failed to inform the Brantleys of such development and thus the lack of any reason for the Brantleys to obtain a loan. (See FAC ¶¶ 12, 13; FACC ¶ 32.) Cross-claimants thereafter filed their cross-claim against Boyd, and subsequently their amended cross-claim, by which they seek full equitable indemnity as well as attorney's fees and costs. On July 30, 2013, the Clerk of Court entered default against Boyd on the amended cross-claim and cross-claimants then filed the instant motion for default judgment.

## DISCUSSION

### A. Jurisdiction

As discussed above, the Brantleys' complaint alleges both federal and state claims. The Court thus has original jurisdiction over the federal claims and supplemental jurisdiction over the state claims. See 28 U.S.C. § 1331 (providing "district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States); § 1367 (providing "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within . . . original jurisdiction that they form part of the same case or controversy").

### B. Default Judgment

After entry of default by the clerk, a default judgment may be entered by the district court. See Fed. R. Civ. P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The factors courts consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." See Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987).

3

In their FACC, cross-claimants bring two claims: Equitable Indemnity (First Cause of Action) and Tort of Another (Second Cause of Action). The Court addresses each in turn.

**1. Equitable Indemnity**

Cross-claimants allege that at a settlement conference conducted in November 2012, they entered into a settlement agreement with plaintiffs, by which plaintiffs dismissed their claims against cross-claimants in exchange for a payment by cross-claimants in the amount of $25,016.50. (See FACC ¶¶ 24, 30.)[2] Cross-claimaints now seek judgment against Boyd in that amount. (See FACC ¶ 34; Memorandum of Points and Authorities in Support of [Cross-Claimants'] Application for Default Judgment ("Cross-Claimants' App.") at 10-11, 18.)

"The basis for [equitable] indemnity is restitution, and the concept that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay." W. Steamship Lines, Inc. v. San Pedro Peninsula Hosp., 8 Cal. 4th 100, 108 (1994). "Although traditional equitable indemnity once operated to shift the entire loss . . ., the doctrine is now subject to allocation of fault principles and comparative equitable apportionment of loss." Prince v. Pacific Gas & Elec. Co., 45 Cal. 4th 1151, 1158 (2009). "Comparative equitable indemnity includes the entire range of possible apportionments–from no indemnity to total indemnity." City of Huntington Beach v. City of Westminster, 57 Cal. App. 4th 220, 224 (1997).

**a. Total Indemnity**

As noted, cross-claimants seek total indemnity. Total indemnity is available, however, only "when one party bears 100 percent of the fault and another bears none." See id. In this instance, the requisite showing has not been made. Rather, as set forth in the FAC, cross-claimants owed to the Brantleys both a duty of care and a fiduciary duty to inform them of significant developments known to cross-claimants, and cross-claimants failed to inform the Brantleys that there no longer existed a reason for them to take out the

---

[2] Cross-claimants also allege, without disclosing the sum paid, that Academy Escrow settled with plaintiffs at the same conference. (See FACC ¶ 24.)

home equity loan that ultimately led to their loss of $180,000 and the potential loss of their home. The FACC contains no allegation to the contrary and, indeed, cross-claimants "acknowledge that they might have been found liable to plaintiffs on plaintiffs' negligence cause of action if the matter had proceeded to trial." (FACC ¶ 32.)

Accordingly, cross-claimants are not entitled to total indemnity.

**b. Partial Indemnity**

As noted, equitable indemnity encompasses not only total indemnity but also partial indemnity. Although cross-claimants have not sought, either in their FACC or the instant application, a judgment of partial indemnity, let alone made any suggestion as to how such an award could be made, the Court, as discussed below, nonetheless has considered the matter.

Where a defendant enters into a settlement with a plaintiff, the settling defendant may seek from any nonsettling concurrent tortfeasor contribution based on comparative fault, and "the trier of fact determines the fault attributable to all parties." See, e.g., Union Pacific Corp. v. Wengert, 79 Cal. App. 4th 1444, 1446, 1450 (2000). Having considered the facts presented, the Court apportions fault as follows: 70% to Boyd, 20% to Academy Escrow, and 10% to cross-claimants. The Court next determines whether cross-claimants, in settling with the Brantleys for the sum of $25,016.50, paid more than their proportionate share of the Brantleys' damages. See, e.g., id. at 1447.

In that regard, the Court first notes that under California law, defendants are jointly and severally liable for a plaintiff's economic damages and only severally liable for a plaintiff's non-economic damages. See id. Consequently, comparative equitable indemnity is available only for that portion of a settlement attributable to economic damages. See id. at 1451. Where, as here, the settlement does not specify the proportion thereof attributable to economic loss, the trier of fact determines "what percentage of the settlement represents a reasonable compromise of [the plaintiff's] economic damages." See id. at 1452.

To make that calculation, a court must first determine the total amount of damages

1 incurred by the plaintiff and then determine the percentage thereof constituting non-
2 economic damages; the amount of a plaintiff's damages may be determined either by
3 reference to the total amount of the settlements reached or by independent proof. See id.
4 at 1451. Here, as noted, the total amount of the settlements is not before the Court.
5 Consequently, the Court has endeavored to determine the amount of the Brantleys'
6 damages by reference to the facts contained in the FAC, the FACC, the instant application,
7 and other portions of the relevant record.

8     Based on the record before it, the Court finds the Brantleys' total damages to be
9 $354,300, which sum comprises the $180,000 in converted funds (see FACC ¶¶ 8, 28),
10 pre-judgment interest thereon in the amount of $69,300 (see Referral for Reassignment
11 with Recommendation to Grant [Plaintiffs'] Motion for Default Judgment, filed April 30, 2013
12 ("Referral and Recommendation") ¶ 6.a), the $30,000 interest payment owed to Chandra
13 on the loan (see FAC ¶ 15, Cross-Claimants' App. at 2), and emotional distress in the
14 amount of $75,000 (see Referral and Recommendation ¶ 6.b.; Order, filed July 16, 2013).
15 The Brantleys' economic damages thus represent 79% of their total damages ($279,300 /
16 $354,300). Applying that percentage to the settlement at issue, the Court finds the amount
17 subject to contribution from Boyd is $19,763. See Union Pacific, 79 Cal. App. 4th at 1452.

18     As noted, cross-claimants proportionate fault is 10%. If that percentage is applied to
19 the Brantleys' economic damages, which, as noted, are $279,300, the amount of cross-
20 claimants' proportionate share is $27,930, which sum is substantially more than $19,763.

21     Accordingly, cross-claimants are not entitled to partial equitable indemnity.

22     **2. Tort of Another**

23     Cross-claimants further seek, under the doctrine of tort of another, an award of
24 $81,952.75 in attorney's fees and also costs in the amount of $11,738.03. Under California
25 law, the "general rule" is that "attorney's fees are to be paid by the party employing the
26 attorney." See Prentice v. N. Am. Title Guar. Corp., 59 Cal. 2d 618, 647 (1963).
27 Nevertheless, "[a] person who through the tort of another has been required to act
28

in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." Id.  Where the proposed indemnitee has defended a claim "upon his own contract, or for his own misfeasance," however, such indemnification is not available.  See Davis v. Air Technical Indus., Inc., 22 Cal. 3d 1, 6 (1978) (reversing award of attorney's fees to party defending against own wrongdoing; noting "tort defendants, even if vindicated, must pay for their own defense").

Here, as noted, the Brantleys' lawsuit against cross-claimants was based on allegations of negligence and breach of fiduciary duty, and cross-claimants themselves concede "they might have been found liable to plaintiffs on plaintiffs' negligence cause of action if the matter had proceeded to trial." (FACC ¶ 32.)

Accordingly, cross-claimants are not entitled to an award of attorney's fees and costs.

**CONCLUSION**

For the reasons stated above, cross-claimants' Application for Default Judgment is hereby DENIED.

**IT IS SO ORDERED.**

Dated: October 25, 2013

_____
MAXINE M. CHESNEY
United States District Judge